[No. 38516.    Department One.    January 5, 1967.]

ANNA J. CARNEY, *Appellant,* v. MARY JANE JOHNSON *et al., Respondents.*\*

---

\*Reported in 422 P.2d 486.

*Kenneth C. Hawkins,* for appellant.

*Paul M. Goode,* for respondents.

JAMES, J.†—Appellant is the widow of Gustaf Albin Carney who died April 16, 1957. He was survived by appellant and three daughters of a former marriage, Mary Jane Johnson, Florence Anderson, and Gladys Carlson. Gustaf's last will and testament included the following:

> Prior to marriage to my present wife, an agreement was entered into with reference to provisions to be made for her in my Last Will and Testament, if she surivves [*sic*] me as my wife. In accordance with the terms of such agreement, I hereby give, devise and bequeath to my wife, Anna J. Abrahamson Carney, in the event she survives me as my wife, the sum of $5,000.00 in cash. I further direct that my said wife shall have the right to the free use during her lifetime or until remarriage of such residence as may have been owned by me, and in which we may have together resided immediately prior to my decease. Such free use of residence shall not include the right to rents, issues and profits of any farm land on which such residence may be situated.

The farm, upon which the residence was situated and in which the decedent and appellant resided at the time of his death, was devised to decedent's daughters, Mary Jane Johnson and Florence Anderson, who are respondents herein. The third daughter received title to another farm property not involved in this action.

By way of a codicil to his will decedent made further provision for appellant in language as follows:

> If my wife, Anna J. Abrahamson Carney survives me she shall be entitled, in addition to the other privileges and benefits given in my Last Will and Testament and prior Codicil, to receive for her sole and separate estate one fourth ($\frac{1}{4}$) of the net annual rents, issues and profits, after taxes and water charges have been paid, of the following described real property now owned by me, to-wit:
>
> . . . .

---

†Judge James is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2 (a) (amendment 38), state constitution.

and such rights to continue during the term of her natural life, unless released sooner by her in writing, and such rights shall continue even though, under the terms of my Last Will and Testament, said described real estate is bequeathed share and share alike to my daughters, Mary Jane Carney Johnson and Florence Carney Anderson.

This language was repeated verbatim in the decree of distribution.

Appellant instituted this action against respondents seeking a judgment for the sum of $5,388.08. In her complaint appellant refers to the provisions of the will, codicil and decree of distribution and asserts her entitlement to the full amount ($5,388.08) received from the tenant farmer of the property involved (less taxes and water charges) by respondents subsequent to the death of the father and husband, Gustaf.

Respondents' answer recites the tender to appellant of one-fourth of the amount received from the tenant farmer (less taxes and water charges), and asserts this to be in accordance with the terms of decedent's will. The trial court granted respondents' motion for a summary judgment of dismissal. Appellant's only assignment of error is that there are substantial questions of fact material to the issue which should have been resolved by a trial in order to determine the true intent of the testator.

Appellant bases her assertion that there are issues of fact upon her contention that the will and codicil and consequently the decree of distribution were patently and latently ambiguous.

█ A patent ambiguity is one which is apparent upon the face of the instrument. A latent ambiguity is one that is not apparent upon the face of the instrument alone and that is discovered, for example, where it is sought to identify the property or the beneficiaries. 4 Page, Wills § 32.7 (1960); 95 C.J.S. *Wills* § 636 (1957).

In his written memorandum opinion the trial court stated:

It is next contended by plaintiff that if there is no patent ambiguity, the court may nevertheless admit extrinsic evidence where there is a latent ambiguity.

In his following analysis the trial court correctly recognizes that the nature of a latent ambiguity is such that it is not discoverable without extrinsic evidence.

A latent ambiguity exists only where the words of the will, although clear on their face, apply to two situations, either of which is consistent with the meaning of the words as expressed in the will, or where the language of the instrument does not lack certainty but some extrinsic or collateral matter outside the will renders the meaning obscure and uncertain. 95 C.J.S. § 636 (1957).

The trial court then noted that neither the pleadings nor the affidavits addressed to the motion for summary judgment suggest any extraneous fact or evidence creating the necessity for interpretation or choice among two possible meanings. The trial court extended to appellant an opportunity to file further affidavits before signing the judgment of dismissal. The record indicates that no further affidavits were filed by appellant. Only the coincidental fact that both testator's rental arrangement and the rental agreement subsequently negotiated by respondents produced for the lessor a 25 per cent share of the crop, lends any credence to appellant's position. If, for example, respondents had been able to find only a tenant farmer who would pay no more than 20 per cent of the value of the crop, appellant's contention that extrinsic facts disclosed a latent ambiguity would lose its substance. Nothing in the record before us presents any question as to a latent ambiguity.

■ Therefore, unless the questioned language of the codicil, "one fourth (¼) of the net annual rents, issues and profits, after taxes and water charges have been paid," can be said to be patently ambiguous, the trial court must be sustained.

Extrinsic evidence may not be received for the purpose of increasing, diminishing, or varying the estate or interest given by an unambiguous will, or to vary the legal effect of the language used. 4 Page, Wills § 32.7 (1960).

This court in a long line of cases commencing with *Webster v. Thorndyke,* 11 Wash. 390, 39 Pac. 677 (1895), has consistently adhered to the rule that if the intent of the testator can be gathered from the will, it is the duty of the court to see that such intention is given effect.

Conversely we have observed:

> It is only where the terms of the will are ambiguous and the intention left in doubt that a resort may be had to adventitious circumstances to determine that intention. *Such circumstances can never be invoked to create an ambiguity not apparent in the will itself,* nor necessarily arising when it is sought to apply the terms of the will to the subject-matter or to the beneficiaries. (Italics ours.) *Peck v. Peck,* 76 Wash. 548, 552, 137 Pac. 137 (1913).

To the same effect are *Winner v. Carroll,* 169 Wash. 208, 13 P.2d 450 (1932), and *In re Johnson's Estate,* 46 Wn.2d 308, 280 P.2d 1034 (1955).

In her brief on appeal, appellant asserts:

> It of course is obvious that the use of the phrase here, "one-fourth of the rents, issues and profits, less taxes and water," is indicative of the fact that the testator intended to refer to the entire rentals being paid by the then tenants.

Disregarding the obvious non sequitur (if "obvious" it is not "ambiguous") we examine appellant's reasons for asserting that extraneous evidence should be received to determine testator's true intention. Appellant reasons thusly: "The words 'rents, issues and profits' mean *all that the land yields,* not just what the tenant pays over to the landlord." (Italics ours.) Appellant further argues that if the intent of the testator was as is contended by respondents, he would have used the words "one-fourth of one fourth."

Respondents, on the contrary, observe that if testator's intention had been as appellant would have it, he could have simply left her a life estate in the property, or have said "the" one-fourth.

But what in fact did the testator say? The original will created a life estate for appellant in the residence upon

the farm but specifically provided that: "Such free use of residence shall not include the right to rents, issues and profits of any farm land on which such residence may be situated."

The later codicil provided that appellant was to receive, in addition to the life estate in the home, *"one fourth* (¼) of the net annual rents, issues and profits, . . . ." (Italics ours.)

The words used by testator are clear and unambiguous. The trial court properly granted the motion for a summary judgment of dismissal. Manifestly he intended a *full* life estate in the residence and a *limited* interest in the rents and profits from the farm operation.

The judgment is affirmed.

HILL, OTT, HUNTER, and HAMILTON, JJ., concur.