[No. 235-3.    Division Three.    March 1, 1971.]

*In the Matter of the Estate of* JAMES A. SEATON, *Deceased.*
MARGARET PAUL, *Appellant,* v. JAMES A. SEATON, JR.,
*Respondent.*

*J. S. Applegate* (of *Halverson, Applegate, McDonald, Bond & Grahn*), for appellant.

*B. E. Kohls,* for respondent.

EVANS, J.—This case involves the construction of a will. Decedent, James A. Seaton, a widower, died January 7, 1968, survived by two adult children, James Alan Seaton, his son, and Margaret Paul, his daughter.

Decedent's last will and testament dated November 29, 1961 was admitted to probate and, under its terms, his daughter Margaret Paul was appointed executrix.

The dispute arises from different interpretations placed upon the fifth paragraph of decedent's will, which provides:

FIFTH: I give, devise and bequeath all the rest, residue and remainder of my property of whatsoever name and nature and wheresoever situated to my said two children, to-wit: JAMES ALAN SEATON and MARGARET PAUL, share and share alike, except that, during the probate of my estate and at any time before the distribution thereof, my son, JAMES ALAN SEATON, shall have the right to purchase from the estate the one-half interest of my daughter in the farm owned by me and personal property consisting of all of my interest in cattle and farm equipment. For the purpose of said purchase and sale, I hereby fix the value of said property at the sum of Twenty-two Thousand Dollars ($22,000.00).

The son, James Seaton, interprets this paragraph to mean that he has the right to purchase his sister's one-half interest in the farm, cattle and farm equipment for the sum of $11,000. The daughter, Margaret Paul, contends her brother has the right to purchase her one-half interest therein for $22,000. (The record discloses that the decedent's interest in the cattle and farm equipment was disposed of by decedent prior to his death.)

The executrix petitioned the court for construction of the will. Upon the hearing of that petition the court construed the will as giving James Seaton the right to purchase his sister's one-half interest in the farm for $11,000.

Margaret Paul moved for reconsideration, contending that, at best, the will was ambiguous. She requested permission to submit evidence of extrinsic facts and circumstances for the purpose of explaining the language of the will, and offered to prove that before and at the time of making his will decedent intended to treat his children equally and, after making his will, stated to disinterested witnesses that he had done so. She also offered to prove that at the time decedent made his will he believed the fair market value of the farm was $42,000 but that he wouldn't sell it for less than $48,000. (It was appraised in the estate at $49,650.)

The trial court, while suggesting in his oral opinion from the bench that paragraph 5 could have more than one interpretation, denied appellant's motion for reconsideration and entered an order sustaining the contention of James Seaton. It is this order from which Margaret Paul appeals.

■ In ruling that James Seaton had a right to purchase Margaret Paul's interest in the farm for the sum of $11,000, the court observed that when the decedent stated "For the purpose of said purchase and sale, I hereby fix the value of *said property* at the sum of Twenty-two Thousand Dollars ($22,000)" the property referred to was the farm, cattle farm equipment. (Italics ours.) Since the cattle and farm equipment had been disposed of, it was the court's opinion that the word "farm" was the last word which can be made an antecedent without impairing the meaning of the sentence, relying upon *Davis v. Gibbs*, 39 Wn.2d 481, 483, 236 P.2d 545 (1951). In that case the court, in determining legislative intent, stated:

> Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. [Citing cases.]

> The last antecedent is the last word which can be made an antecedent without impairing the meaning of the sentence.

■ ■ We do not question that the above rule of grammatical construction to be applied in determining legislative intent is equally applicable in determining the intent of the testator; however, it neither conflicts with nor alters the fundamental rule that the testator's intent is paramount and must be gathered from the will when read as a whole. *In re Estate of Lidston*, 32 Wn.2d 408, 414, 202 P.2d 259 (1949); *In re Estate of Douglas*, 65 Wn.2d 495, 398 P.2d 7 (1965). Furthermore, we do not question the construction placed upon the sentence involved by the trial court *if* (1) no contrary intention appears in the will, and (2) *if* the word "farm" is the last word which can be made an antecedent without impairing the meaning of the sentence involved. However, with reference to (1) above, it is undis-

puted the trial court's ruling that James Seaton had the right to purchase Margaret Paul's one-half interest in the farm for $11,000 resulted in an unequal distribution, contrary to the intent first expressed by the decedent to treat his two children equally. With reference to (2) above, it appears to this court there is merit to the contention of appellant that when decedent used the words "value of said property" this could reasonably refer to "the one-half interest of my daughter", without impairing the meaning of the sentence. Clearly, that is the property right which is the object of the "purchase and sale" mentioned in the same sentence. Such a construction has the added advantage of being more nearly consistent with the "share and share alike" provision.

As stated in *In re Estate of Douglas, supra*, at 499:

> In construing the provisions of the will we are bound by the oft-repeated rules that the testator's intent is paramount and must be gathered from the four corners of the will when read as a whole. Further, where, as here, an estate is given in one part of a will in clear and decisive terms . . . it will not be taken away or cut down by doubtful language of a subsequent clause, but only by positive provision in words as clear and decisive as those which created the estate. [Citing cases.]

While our examination of the will does not necessarily lead us to a conclusion contrary to that reached by the trial court, it does lead us to the conclusion that the language employed by decedent is open to the construction contended for by appellant. Since we hold the will admits of two constructions, it may properly be termed ambiguous, for "ambiguous" simply means capable of being understood in more senses than one. *In re Estate of Torando*, 38 Wn.2d 642, 645, 228 P.2d 142, 236 P.2d 552 (1951).

Also, as stated in *In re Estate of Torando, supra*, at 645:

> When, upon a reading of the will in its entirety, any uncertainty arises as to the testator's true intention, it is well accepted that extrinsic facts and circumstances may be admitted for the purpose of explaining the language of the will. [Citing cases.]

384

Reversed and remanded for further proceedings in accordance herewith.

MUNSON, C.J., and GREEN, J., concur.