Review denied by Supreme Court November 8, 1972.

*In the Matter of the Estate of* JOHN I. NOVOLICH, *Deceased.*

MARY LAIER, *Respondent,* v. CLARK ADAMS, *Respondent,* ROSE GIESE, *Appellant.*

*William L. Maltman* (of *Hennings, Maltman & Weber*), for appellant.

*Emmett G. Lenihan* and *James C. Hanken* (of *Lenihan, Ivers, Jensen & McAteer*), for respondent Laier.

*Stanley J. Krause,* for respondent Adams.

PEARSON, J.—Rose Giese, executrix of the estate of her father, John I. Novolich, appeals the adverse decision of the trial court in two proceedings commenced in connection with her administration of the estate.

In the first proceeding, her sister, Mary Laier, petitioned the probate court to assume jurisdiction of the estate, which had been distributed and closed as a nonintervention estate. (RCW 11.68.010-.040.) She requested the court to vacate an order of solvency which had been entered and to direct a final account.

Mary Laier also commenced a separate action for damages against her sister, Rose Giese, and against Clark Adams, attorney for the estate, claiming that both had breached a fiduciary duty owed to her as an heir in the course of administering the estate. In this latter action, Rose Giese cross-complained against Clark Adams and sought a reduction in the $4,000 attorney fee awarded to him for services as attorney for the estate. The two actions

were consolidated for trial and raised primarily the same issues. Some chronology is necessary to an understanding of those questions which are largely factual.

John Novolich died in December, 1968, some 4 months after his wife, Antica. Their similar wills provided that all property would pass to the survivor. Rose Giese was named as executrix in both wills and was given nonintervention powers. Paragraph 4 provided that upon the death of the survivor, the two daughters, Rose and Mary, each was to receive an undivided one-half interest in all property. The last sentence of that paragraph, which has caused some difficulty in construction, provided:

> In the event my wife is not living at the time of my death, *I recommend that at the hearing upon the final account, that the Court partition among the persons entitled thereto, the estate so that my daughter,* ROSE S. GIESE, *receives the land and farm property, and that my daughter,* MARY S. LAIER, *receives other property in lieu thereof, as provided by RCW 11-76-050.*

(Italics ours.) The dispute involved in this litigation centers around the 165-acre farm referred to in this provision of the will.

Mrs. Giese retained Mr. Adams, the attorney who had drafted the will, as attorney for the estate. It is not disputed that he advised both heirs, early in the administration (1) that under the will a final account would not be required; and (2) that Mrs. Giese was entitled to the 165-acre farm and that Mary Laier would have to take other assets in lieu thereof. This advice is a part of the complaint and cross-complaint made against him.

In connection with administration of Antica's estate, the farm was appraised by John Zelasko, a real estate appraiser, at \$52,500. Administration of Antica's estate was almost completed when John I. Novolich died, the order of solvency having been entered on December 18, 1968. The inventory and appraisal and order of solvency were entered in John's estate on January 7, 1969 and again the farm property was appraised at \$52,500.

Mrs. Laier was not satisfied with the appraisal, nor with the advice that she would have to accept other assets in lieu of her interest in the farm. Nevertheless, she declined to obtain a separate appraisal or to retain an attorney, despite a recommendation from Mr. Adams that she was free to do so.

Because of strained relationships between the two heirs, Mr. Adams called them together in March of 1969 to see if their differences could be reconciled. This meeting resulted in a written agreement in which Mrs. Laier sold her interest in the farm to Mrs. Giese for $30,000. On September 4, 1969 a quitclaim deed formalized the agreement. Declaration of completion of Antica's estate was filed on September 10, 1969 and in John's estate on October 7, 1969.

Unbeknownst to Mrs. Laier, and on July 18, 1969, John Zelasko entered into negotiations with Mrs. Giese for the purchase of the farm on behalf of the Port of Grays Harbor. Zelasko testified that Mrs. Giese did not want to sell the farm at that time, but indicated a desire to receive $1,000 per acre. Zelasko finally offered $100,000 for the farm, and the negotiations ceased for several months.

At no time was Mrs. Laier made aware of the negotiations and she testified that she did not learn of a pending sale until June, 1970, shortly before commencing the present actions.

It is also clear that while Mr. Adams was informed in July of 1969 that a client of Zelasko was interested in acquiring the property, he was not informed until after the estates were closed that the negotiations were in a range substantially higher than the appraised value.

On July 12, 1970, Mrs. Giese entered into a real estate contract with the Port of Grays Harbor, agreeing to sell the farm, less 4.8 acres, for $125,000, plus $12,500 for the real estate commission. Twenty-five thousand dollars was paid in cash, the balance to be paid at the annual rate of $12,000.

The trial court found and concluded: (1) that John's will did provide for nonintervention administration, but that a final account was mandatory; (2) that the will did

not require of Mrs. Laier to accept cash in lieu of her undivided one-half interest in the farm, since the language used by the testator was precatory; (3) that the memorandum agreement between the sisters on March 31, 1969 was based upon a mutual mistake of fact, and lacked consideration, and consequently was without legal effect; (4) that Mrs. Giese had breached her duty as a fiduciary by failing to disclose the negotiations which later led to the sale of the farm for an amount substantially greater than the appraised value; (5) that Mrs. Laier was entitled to a one-half interest in the proceeds of the sale and a final accounting; and (6) that Mr. Adams was faithful and diligent in the performance of his duties as attorney for the estate and was without knowledge that the real property was, in fact, worth more than its appraised value; furthermore, that there was no credible evidence showing that he had acted improperly, in bad faith, negligently, or in breach of his fiduciary relationship to the estate and the heirs; and that the $4,000 attorney's fee was reasonable.

The actions were dismissed against Mr. Adams and Mrs. Laier was allowed a judgment against Mrs. Giese for $16,744.56 and allowed one-half the payments on the real estate contract.

Virtually all of the findings and conclusions summarized above are challenged by Mrs. Giese on appeal. In particular, she challenges the court's interpretation of the will, the nullification of the memorandum agreement, and the determination that she had breached her fiduciary duty. Furthermore, she seeks to shift the blame to Mr. Adams for erroneous legal advice and challenges the court's determination that his fee was reasonable. It is our view that substantial evidence supports the factual determination made by the trial court and we agree with its resolution of the legal questions.

The first question to be considered is whether or not the trial court's determination that the will required a final account was correct.

■ It is axiomatic that the testator's intent is paramount in construing a will and that such intention must come from the words he uses, construed in their natural and obvious sense. *In re Estate of Johnson,* 46 Wn.2d 308, 280 P.2d 1034 (1955); *In re Estate of Seaton,* 4 Wn. App. 380, 481 P.2d 567 (1971).

■ Paragraph 5 of the will directed administration "without the intervention of the Court." Paragraph 4 stated: "I recommend that at *the* hearing on the final account . . ." (Italics ours.) We agree that nonintervention administration was contemplated, but the latter provision also demonstrates an intention that there be a final account.

This type of conflict was considered in *In re Estate of Eberle,* 4 Wn. App. 638, 484 P.2d 478 (1971). For the reason stated in that opinion, the trial court was justified in ordering a final account, despite the nonintervention provision. The testator's direction that a final account be had is sufficient to remove the will from nonintervention administration for the purpose of requiring a final account.

■ Mrs. Giese contends, however, that even if a final accounting were required, it was waived by the parties. *In re Estate of Eberle, supra.* However, a waiver is the intentional and voluntary relinquishment of a known right. *Gorge Lumber Co. v. Brazier Lumber Co.,* 6 Wn. App. 327, 493 P.2d 782 (1972). The attorney for the estate advised the sisters that no final accounting was required. Consequently, there was neither an intentional relinquishment of, nor a known right to a final accounting.

■ The court was also justified, because of the precatory language of paragraph 4, in determining that Mrs. Giese was not entitled to the farm as a matter of right. *See* 1 W. Bowe and D. Parker, *Page on Wills,* § 5.19, 211 (1960). It was not required that the farm be awarded to her and no condition or penalty was provided for in the event it was not awarded to her. *In re Estate of Milton,* 48 Wn.2d 389, 294 P.2d 412 (1956).

Since the memorandum agreement entered into between

the sisters on March 31, 1969 was premised upon an erroneous construction of the will, we agree that a mutual mistake existed which justified the trial court in nullifying the effect of that agreement.

The mistake concerning which sister had a right to the farm came from the advice given by the attorney for the estate. It was mutual and made independently by each party who accepted the advice. Accordingly, it is distinguishable from *Pepper v. Evanson,* 70 Wn.2d 309, 422 P.2d 817 (1967), where one party, without independent knowledge, accepted the opinion of another party.

■ While the mistake appears to be a mistake of law, rather than of fact, the law treats a false construction put upon a will by interested parties to be one of fact, rather than one of law. *Stahl v. Schwartz,* 67 Wash. 25, 120 P. 856 (1912).

The trial court was likewise justified in determining that Mrs. Giese breached a fiduciary duty by not reporting to her sister the negotiations and the offer of the port to buy the farm for an amount substantially greater than its appraised value. This offer came in July, 1969, while she was still executrix.

Even as a nonintervention executrix, her duties were not terminated at that time, since the declaration of completion had not yet been executed or filed. RCW 11.68.010. This statute imposes a duty on an executor to either obtain a final decree or file a declaration of completion. 31 Wash. L. Rev. 22, 30 (1956).

■ The rule applicable here was aptly stated most recently in *Hesthagen v. Harby,* 78 Wn.2d 934, 942, 481 P.2d 438 (1971):

> The administrator of a decedent's estate is an officer of the court and stands in a fiduciary relationship to those beneficially interested in the estate. In the performance of his fiduciary duties he is obligated to exercise the utmost good faith and to utilize the skill, judgment, and diligence which would be employed by the ordinarily cautious and prudent person in the management of his own trust affairs. [Citing cases.]

Concealing the true value of an asset subject to administration, to the detriment of an heir, is clearly a breach of the duty imposed by this rule. Mrs. Giese's statement that the farm belonged to her because of the memorandum agreement would not justify this concealment. Even had that agreement been valid, the will which Mrs. Giese was charged with administering entitled her sister to an undivided one-half interest of all assets of the estate. When the prospective windfall came to her attention before the estate was finally closed, she had a duty to disclose the windfall and carry out the declared intentions of her father that each sister should "share and share alike" in the assets. *See Stewart v. Baldwin,* 86 Wash. 63, 149 P. 662 (1915).

Mrs. Giese also urges laches as a defense, contending that Mrs. Laier failed to take timely legal action. Mrs. Laier testified that she learned of the pending sale in early June, 1970; that she contacted an attorney on June 9, 1970; and the suit was commenced on July 27, 1970. There was no evidence to contradict this testimony. This time lapse is not substantial and laches was not established.

In any event, laches is an equitable defense and cannot be successfully urged by those who withhold information which would have prompted action at an earlier time. *Shew v. Coon Bay Loafers, Inc.,* 76 Wn.2d 40, 455 P.2d 359 (1969).

We now turn to the appeal by Mrs. Giese from the dismissal of her cross-complaint against Mr. Adams.[1] The record is devoid of any evidence that Adams knew of the offer for the purchase of the farm above its appraised value or that it was, in fact, worth more than $52,500, prior to the time the declarations of completion in both estates were filed. We think this constitutes substantial evidence and sustains the trial court's factual determination that Mr. Adams was faithful and diligent in the discharge of his duties as attorney for the estate. *Coy v. Raabe,* 77 Wn.2d 322, 462 P.2d 214 (1969).

---

[1]Mary Laier does not appeal from the order dismissing with prejudice her action for damages against Mr. Adams.

■ While the trial court's interpretation of the will was at variance with Mr. Adams' advice, it does not follow that the erroneous advice establishes actionable negligence. It is axiomatic that there must be injury before negligence is actionable. Since each heir obtained her rightful share of the estate, neither suffered damage as a result of Adams' advice.

Moreover, Mr. Adams was in possession of no fact which would have placed either a reasonable attorney or a fiduciary on notice of an unfaithful performance by the executrix. The breach of Mrs. Giese's fiduciary duty, and not Adams' good faith efforts to secure a family settlement or his erroneous interpretation of the will, led to the necessity of this lawsuit. Consequently, proximate causation was not factually established on either a negligence or a breach of trust theory. *See Leach v. Weiss,* 2 Wn. App. 437, 467 P.2d 894 (1970).

With reference to the attorney's fees, the trial court found that the $4,000 fee awarded for Mr. Adams' services in connection with the estate of John Novolich was fair and reasonable. The only testimony concerning the fee came from Mr. Adams, who testified that his fee was computed on the basis of the minimum bar fee schedule for Grays Harbor County. No countering evidence was offered to show that the fee schedule was excessive under the circumstances of this case.

■ In determining the allowance for services of an attorney, each case must be judged on the particular circumstances involved. The fee must be fair and reasonable compensation for the services rendered. *In re Estate of Holmgren,* 189 Wash. 94, 63 P.2d 504 (1937); *In re Estate of Fetterman,* 183 Wash. 410, 48 P.2d 638 (1935); *In re Estate of Coffin,* 7 Wn. App. 256, 499 P.2d 223 (1972).

The trial court's discretion in the award of attorney's fees and its findings should not be disturbed unless the facts and circumstances clearly show an abuse of discretion. *In re Estate of Fetterman, supra; In re Estate of Coffin, supra.*

The complicating element in this case is the fact that

Antica Novolich predeceased her husband by just over 4 months and their estates were probated separately. The assets of Antica's estate passed into John's estate. While identical fees were allowed in both estates, the fee allowed in Antica's estate has not been challenged, nor is her estate before us for consideration.

Although Mr. Adams testified that the estates could have been consolidated, the evidence is uncontradicted that most of the work in Antica's estate was completed prior to John's death. Thus, no matter which route Mr. Adams elected, some duplication of effort was unavoidable. The wisdom of his selection is not free from all doubt but there is substantial evidence to sustain the trial court's determination with reference to the fee.

No testimony was offered to show that a $4,000 fee was unreasonable under the circumstances of this case. But for the overreaching by the executrix, John's estate would have been finalized to the satisfaction of all, with the filing of the declaration of completion. Mr. Adams' testimony with reference to his fee constituted substantial evidence as to the reasonableness of the fee and supports the trial court's exercise of its discretionary powers. We find no other facts or circumstances pointing to an abuse of that discretion. *In re Estate of Coffin, supra.*

Affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied October 6, 1972.