[Nos. 5605–8–III; 5667–8–III.   Division Three.   June 26, 1984.]

*In the Matter of the Estate of* KURT
H. BERGAU, JOSEPH P. DELAY,
ET AL, *Appellants.*

*Joseph P. Delay* and *Delay, Curran, Thompson & Pontarolo, P.S.,* as guardian ad litem.

*Stephen G. Thom* and *Underwood, Campbell, Brock & Cerutte, P.S.,* for appellant.

THOMPSON, J.—Elsie Angstrom and the guardian ad litem for Gertrude Bergau appeal the admission of extrinsic evidence to interpret a price term in Kurt Bergau's will. We reverse.

Kurt H. Bergau died in 1982, leaving as his heirs a surviving spouse, Gertrude Bergau, who is now incompetent, and three daughters, Elsie Angstrom, Helen Proctor, and Betty Jessup. In his will Mr. Bergau devised the family home and farmland to Mrs. Bergau, but also provided for an option to purchase the farmland and/or cattle in favor of Betty Jessup and her husband as follows:

the right to purchase all or any part of any farm land and/or cattle which is a part of my Estate or the Trust created in this will. The option shall be subject to the following:
1. PRICE: The price of the Farm Land shall be 110% of the County assessed fair market value at the date of my death. Cattle shall be at fair market value.

The will also contained a dispute clause:

Any dispute over implementation or documentation of the option and/or sale shall be shall be [*sic*] resolved by [the will drafter], whose decision shall be binding on all parties.

The will provided that questions regarding interpretation and construction were to be determined under Washington law.

When the will was executed on April 22, 1976, RCW

84.40.030[1] was in effect which provides property is to be assessed at 100 percent of its true and fair value in money unless otherwise permitted by law. On December 27, 1976, Mr. and Mrs. Bergau applied to have their land assessed pursuant to the current use or open space statute, which allows farmers to value their land based upon its use or productivity. RCW 84.34.010, .065. This law was intended to operate in part as a tax savings to farm owners. *See* RCW 84.34.010. The subject real property was placed on the open space assessment roll in 1977. Thereafter, the Bergaus were taxed on the basis of the use value of the property; however, the county tax assessor, as required by RCW 84.34.050, compiled both market and use assessments for the property each year.

Mr. Bergau's will was admitted to probate without objection. William and Betty Jessup then submitted an offer to purchase the land at 110 percent of its assessed value based on tax receipts for that year. They also submitted a letter written to them by the attorney who drafted the will which stated it was Mr. Bergau's intention that they have an opportunity to purchase the farm at a substantial savings.

Elsie Angstrom objected to the Jessups' offer, petitioning for a declaratory judgment as to the price to be paid for the farmland. She alleged the purchase offer was erroneously based on the *use* value of the land, rather than its *fair market value*. Additionally, Mrs. Angstrom, joined by Mrs. Bergau's guardian ad litem, moved in limine to exclude parol evidence concerning Mr. Bergau's intent on the basis the will unambiguously required the property to be purchased at its assessed fair market value.

The trial court found, in light of the dual system of valuation and assessment of the property at the date of Mr. Bergau's death, the language "County *assessed* fair market value at the date of my death" (italics ours) was ambiguous. In so concluding the court admitted extrinsic evidence, including testimony that assessed value meant taxed value,

---

[1]*See* Laws of 1973, 1st Ex. Sess., ch. 195, § 96, p. 1513.

that Betty Jessup was the Bergaus' favorite child, and testimony from the drafter of the will that Mr. Bergau did not intend the Jessups be required to pay the higher fair market value. Based on the testimony and the will as a whole, the court found Mr. Bergau intended the sale price to be 110 percent of the value upon which the property was taxed or its use value rather than fair market value. The result was a $156,805 savings to the Jessups.

Mrs. Angstrom and the guardian ad litem first assign error to the admission of extrinsic evidence to ascertain Mr. Bergau's intent since, appellants contend, the will term, "County assessed fair market value", is unambiguous.

While courts are required to "interpret" wills to discover the intention of the testator, the concept of will "construction" is the separate task of assigning meaning to the document when the testator's intention may not be gleaned from proper sources. T. Atkinson, *Wills* § 146, at 809–10 (2d ed. 1953). Thus, construction is necessary and only is allowable when interpretation fails to answer the questions relevant to disposition of the testator's property. T. Atkinson, at 810. Whenever possible, in Washington the intent of the testator should be garnered from the four corners of the will "unaided by extrinsic facts". *In re Estate of Riemcke,* 80 Wn.2d 722, 729, 497 P.2d 1319 (1972). Nevertheless, even where no ambiguity exists in the wording of the will so as to invoke the rule against construction, it is still necessary to give effect to the testator's intent from the will language. *In re Estate of Riemcke,* at 728. Thus, the further rule is often repeated that in giving effect to the testator's intent from the words in the will, mindful the court may not rewrite the document, it is nevertheless appropriate to consider "the situation as it existed when the will was drawn and" with an awareness of "all the surrounding circumstances". *Anderson v. Anderson,* 80 Wn.2d 496, 499, 495 P.2d 1037 (1972).

The "surrounding circumstances" concept is a narrow one, and a litigant may not seek to introduce any and all parol evidence under the circumstance guise. The term

means "application to the physical facts". *Wattenburger v. Morris,* 436 S.W.2d 234, 239 (Tex. Civ. App. 1968). Accordingly, in this case the court appropriately considered the circumstances of changes in statutory law, *Anderson v. Anderson, supra,* the general impact these changes had on farmers, the statutory requirement the tax assessor compile market and open space values and the fact the Jessups farmed the land in question. The issue narrows to whether the letter and oral testimony of the attorney drafting the will should have been admitted.

█ To control the admissibility of extrinsic evidence, courts have defined three species of ambiguities. Evidence of surrounding circumstances is always admissible to help explain the first type, called a "patent" ambiguity. *See, e.g., In re Estate of Torando,* 38 Wn.2d 642, 645, 228 P.2d 142, 236 P.2d 552 (1951); 4 W. Bowe & D. Parker, *Page on Wills* § 32.7, at 255 (1961). The second type, called a "latent" ambiguity, is one not readily apparent from the face of the will. *Vadman v. American Cancer Soc'y,* 26 Wn. App. 697, 699, 615 P.2d 500 (1980). This type of ambiguity is not even discoverable until extrinsic evidence of facts is admitted. 4 W. Bowe & D. Parker, at 258. Equivocation "involve[s] an accurate description that equally applies to two or more persons of the same name or things of the same description . . ." 4 W. Bowe & D. Parker, *Page on Wills* § 32.9, at 271. *See also Siegley v. Simpson,* 73 Wash. 69, 71, 131 P. 479 (1913). It is only with an equivocation ambiguity that courts should go outside the physical facts and circumstances and additionally admit extrinsic evidence of the testator's direct declarations of intention. This is so since admission of such evidence is fraught with the inherent danger of fraud. *See* 4 W. Bowe & D. Parker, at 271.

In sum, with the exception of cases in which the will language appears correct but which applies equally to two or more objects, evidence of a testator's direct declarations of intent is not admissible to demonstrate the testator's actual intent apart from the legal effect of the language used in the will. This includes declarations made before, during, or

after execution of the will, his instructions to the will drafter, and his written declarations not executed under the statute of wills. This is so regardless of whether the attorney drafting the will failed to carry out the testator's instructions. 4 W. Bowe & D. Parker, at 266–70. *See, e.g., Siegley v. Simpson, supra; In re Estate of Torando, supra; In re Estate of McNulta,* 168 Wash. 397, 400, 12 P.2d 389 (1932); *In re Estate of Seaton,* 4 Wn. App. 380, 381, 481 P.2d 567 (1971).

Here, error was committed in admitting evidence of Mr. Bergau's declarations to his attorney to define the will term "assessed". At the time the will was executed, property was assessed at its true and fair value which meant fair market value. *Northwest Chemurgy Sec. Co. v. Chelan Cy.,* 38 Wn.2d 87, 91, 228 P.2d 129 (1951). After the will was executed, the Bergaus applied for and received the classification allowing for assessment under the productivity statute. While at the time of the testator's death, the county assessed value listed both the productivity and fair market value, this was merely a recordkeeping requirement. *See* RCW 84.34.050. The testator's price provision in the will clearly refers to the market value assessment.

Consequently, the term "assessed" does not present an equivocal ambiguity. Nonetheless, that term has been defined as valuation of taxable property, not the actual levying of the tax. *State ex rel. State Tax Comm'n v. Redd,* 166 Wash. 132, 148–49, 6 P.2d 619 (1932). We therefore conclude evidence of the testator's declarations was inadmissible to define that term as being the taxed value under the productivity statute.

Further, without evidence of the testator's declarations to his attorney, a different intent cannot be ascertained from the will itself considered in the context of the surrounding physical circumstances. Although Betty Jessup was made executrix and given broad trustee powers, the farm prop-

erty was a major part of a devise and trust estate to the testator's wife, for whom he presumably intended to provide.

Next, Mrs. Angstrom and the guardian ad litem contend the dispute clause which empowers the will drafter to implement the purchase option may not be used to redefine the plain price terms of Mr. Bergau's will. The parties agree with the dictionary meanings of the terms "implementation" and "documentation" used in the dispute clause. Thus, the testator's declarations are not admissible to explain these terms. While the dispute clause gives the drafting attorney leeway to settle controversies among the heirs, it does not state he is to place his interpretation upon the price clause. Further, the will provides that interpretation questions are to be governed by the laws of Washington.

Lastly, the estate seeks reimbursements for costs and attorney fees incurred as the result of what it deems is a frivolous appeal by Elsie Angstrom. It acknowledges the need of the guardian ad litem to protect Mrs. Bergau's interests, but regards Mrs. Angstrom's involvement in the appeal as an unnecessary duplication serving no useful purpose except to increase costs. A frivolous appeal occurs when there is no debatable issue upon which reasonable minds can differ. *Dearborn Lumber Co. v. Upton Enters., Inc.,* 34 Wn. App. 490, 494, 662 P.2d 76 (1983). In viewing this appeal strictly from Mrs. Angstrom's position to determine whether it is frivolous, we hold it is not. Mrs. Angstrom is an aggrieved party who may protect her own interests. She correctly argues her interests are not identical to the guardian ad litem's and their interests could diverge, for example, in pursuing settlement. The trial court did not award costs or fees and it is similarly inappropriate to award them on appeal.

We reverse the judgment of the trial court.

GREEN, A.C.J., and McINTURFF, J., concur.

Reconsideration denied July 18, 1984.

Review granted by Supreme Court October 5, 1984.