[No. 50847-0. En Banc. January 10, 1985.]

*In the Matter of the Estate of*
KURT H. BERGAU.

*Jonathan Lee,* for petitioner.

*Underwood, Campbell, Brock & Cerutti, P.S.,* by *Thomas R. Luciani,* for respondent.

*Joseph P. Delay* and *Delay, Curran, Thompson & Pontarolo, P.S.,* as guardian ad litem.

BRACHTENBACH, J.—Did the trial court err in finding the option provision of the will of the decedent to be ambiguous and, therefore, also err in admitting extrinsic evidence of the testator's intent? The Court of Appeals reversed. *In re Estate of Bergau,* 37 Wn. App. 903, 684 P.2d 734 (1984). We reverse the Court of Appeals.

The decedent and his wife executed reciprocal wills on April 22, 1976. Those wills granted to their daughter, Betty Jessup, and her husband an option to purchase all or any part of any farmland and/or cattle which was part of the decedent's estate or testamentary trust. This dispute is over the price of the farmland to be fixed upon exercise of the option.

When the decedent died in May 1982, he was survived by his wife, then and now incompetent, and three daughters, including the option holder, Betty. Another daughter and the widow's guardian ad litem objected to the option price offered by Betty and her husband in their effort to exercise the option.

The question of the appropriate option price was brought before the trial court. After hearings on the matter, the trial court found and concluded that the offer by the Jessups was consistent with the terms of the will and should be confirmed.

The troublesome clause provides:

C. OPTION TO PURCHASE:

I hereby grant to my son–in–law, WILLIAM JESSUP, and my daughter BETTY JESSUP, if they are married at the time of my death, the right to purchase all or any part of any farm land and/or cattle which is a part of my Estate or the Trust created in this will. The option shall be subject to the following:

1. PRICE: The price of Farm land shall be 110% of the County assessed fair market value at the date of my death. Cattle shall be at fair market value.

The option also provided for a 20 percent down payment, interest at 6 percent, with equal payments over 10 years. Additionally, this option provided:

7. DISPUTE: Any dispute over implementation or documentation of the option and/or sale shall be resolved by attorney EDWARD A. DAWSON whose decision shall be binding on all parties.

8. CONFLICT OF INTEREST: The fact that my daughter may be serving in a role as personal representative and/or Trustee or co–personal representative or Trustee shall have no effect whatsoever on the option, sale or any conveyance pursuant thereto.

The question is whether the option price should be based on the county assessor's "open space" or "current use" value or the assessor's appraised fair market value. Real estate taxes are determined by assessing the levy rate against the "open space" or "current use" value, rather than the appraised fair market value, if the taxpayer has elected that statutorily granted option. The appraised fair market value, based in this case upon comparable sales, is considerably higher. The Jessups will pay $156,805 more if the option price is calculated upon the fair market value.

The question arises because of changing assessment practices. Under our real estate taxation scheme, the county assessor must establish a value for the property against which the various levy amounts are assessed, resulting in that year's real estate tax. The county assessor testified and the trial court found that historically the county assessed value was substantially lower than the fair market value. Prior to 1974, RCW 84.40.030 required that "[a]ll property shall be assessed fifty percent of its true and fair value in money." Effective January 1974, RCW 84.40-.030 was amended to provide:

All property shall be valued at one hundred percent of its true and fair value in money and assessed on the same basis unless specifically provided otherwise by law.

The increase from 50 to 100 percent assessment is consistent with the court's findings and no error is assigned.

In RCW 84.34, enacted in 1970 and amended in 1973, the Legislature enunciated the desire to encourage the maintenance and preservation of open space lands for the production of food, fiber and forest crops and to assure the use

and enjoyment of natural resources and scenic beauty. RCW 84.34.010. To implement this goal, RCW 84.34.060 provides that the assessor shall consider only current use of qualified property in determining true and fair value. Once the "current use" option is applied for and approved, the assessor files notice each year of both values and notes that the "current use" value is to be the basis for assessment. RCW 84.34.035. The assessor testified and the court found that, pursuant to RCW 84.34.035, he maintains a separate listing for market value and for current use or open spaces value. Property is assessed according to its value under the chosen system of classification.

After the 1974 amendment to RCW 84.40.030 increased the value at which property is assessed from 50 to 100 percent, the "current use" classification under RCW 84.34 became more attractive as a possible avenue for tax relief.

At the time of execution of the will in April 1976, the testator's land was valued under the 100 percent valuation of RCW 84.40.030. In December 1976, the decedent and his wife placed their farmlands into the RCW 84.34 "open spaces" or "current use" classification, thereby substantially reducing its value for assessment purposes. The lawyer who drafted the will testified that the decedent intended that the land be valued under the "current use" assessment and, thus, intended to favor the appellants.

No error is assigned to the admittance of the testimony of the assessor. Error is assigned, however, to the admittance of the testimony of the lawyer who drafted the will. Before considering this testimony, we review the well established rules of will construction.

 When called upon to construe a will, the paramount duty of the court is to give effect to the testator's intent. *In re Estate of Riemcke,* 80 Wn.2d 722, 728, 497 P.2d 1319 (1972). Such intention must, if possible, be ascertained from the language of the will itself and the will must be considered in its entirety and effect must be given every part thereof. *In re Estate of Douglas,* 65 Wn.2d 495, 499, 398 P.2d 7 (1965); *Elder v. Seattle First Nat'l Bank,*

33 Wn.2d 275, 278, 204 P.2d 1068 (1949).

Because a testator employs language in the will with regard to facts within his knowledge, the court must consider all the surrounding circumstances, the objects sought to be obtained, the testator's relationship to the parties named in the will, his disposition as evidenced by provisions to be made for them and the general trend of his benevolences as disclosed by the testament. *Anderson v. Anderson,* 80 Wn.2d 496, 495 P.2d 1037 (1972); *In re Estate of Quick,* 33 Wn.2d 568, 206 P.2d 489 (1949). It will be presumed that the testator was familiar with the surrounding circumstances which could affect the construction materially, such as the value of his property. 4 W. Bowe & D. Parker, *Page on Wills* § 30.08, at 63 (1961). Although a will speaks as of the date of the testator's death, the testator's intentions, as viewed through the surrounding circumstances and language, are determined as of the time of the execution of the will. *In re Estate of Robinson,* 46 Wn.2d 298, 280 P.2d 676 (1955).

When upon a reading of the will in its entirety any uncertainty arises as to the testator's true intention, it is well accepted that extrinsic facts and circumstances may be admitted for the purpose of explaining the language of the will. *In re Estate of Riemcke, supra; In re Estate of Torando,* 38 Wn.2d 642, 228 P.2d 142, 236 P.2d 552 (1951). When there is an ambiguity in a will, the testimony of the drafter may be admitted to assist in resolving the problem. *In re Estate of Torando, supra.*

To control the admissibility of extrinsic evidence, courts have defined species of ambiguities. The distinction between a latent and a patent ambiguity has traditionally been made. A latent ambiguity is one that is not apparent upon the face of the instrument alone but which becomes apparent when applying the instrument to the facts as they exist. *Carney v. Johnson,* 70 Wn.2d 193, 422 P.2d 486 (1967); *Vadman v. American Cancer Soc'y,* 26 Wn. App. 697, 615 P.2d 500 (1980); 4 W. Page, *Wills* § 32.7 (1960). A patent ambiguity is one which is apparent on the face of

the instrument. *Carney v. Johnson, supra.* A third specie, equivocation, is an ambiguity which involves an accurate description that equally applies to two or more persons of the same name or things of the same description. 4 W. Bowe & D. Parker, *Page on Wills* § 32.9, at 271 (1961). Extrinsic evidence is admissible upon finding of any one of the species of ambiguity, *In re Estate of Torando, supra; Siegley v. Simpson,* 73 Wash. 69, 131 P. 479 (1913); *In re Estate of Seaton,* 4 Wn. App. 380, 481 P.2d 567 (1971).

In the present case the questioned language of the will is "assessed fair market value at the date of my death". The appellants assert that this language presents an ambiguity in that it is uncertain whether the testator intended the appellants to pay 110 percent of the true and fair market value or 110 percent of the "current use" value. Respondents argue that the language is unambiguous in that the only assessed value at the time of execution of the will was the true and fair market value. The Court of Appeals found that no ambiguity exists and that, therefore, the extraneous evidence as to the testator's intent was improperly admitted.

The inquiry here again is whether an ambiguity existed in the option clause so as to allow the testimony as to the testator's intent. Where the Court of Appeals focused on the phrase "assessed fair market value", we consider the entirety of the price clause of the option provision. We find that an ambiguity does indeed exist.

The intentions of the testator are determined as of the date of the execution of the will. *In re Estate of Robinson, supra.* If analysis is focused solely on the words "assessed fair market value", only one possible "assessed" value exists. At the time of execution, April 1976, the only method of assessment used by the testator was the true and fair value pursuant to RCW 84.40.030. The language, "true and fair value in money", used in RCW 84.40.030, has been consistently interpreted to mean fair market value, the language used by the testator in the option clause. *Twin Lakes Golf & Country Club v. King Cy.,* 87 Wn.2d 1, 4, 548 P.2d

538 (1976); *Mason Cy. Overtaxed, Inc. v. Mason Cy.*, 62 Wn.2d 677, 384 P.2d 352 (1963). It would appear, then, that the only possible interpretation of price could be 110 percent of the value assessed under RCW 84.40.030.

If, however, analysis is focused on the entire price clause, two possible "assessed" values exist. The language in question reads, "110% of the County assessed fair market value at the date of my death". The testator here expressly provided that the value to be used in the option was to be determined at the date of his death. Although the intent of the testator is to be viewed from the perspective of the date of execution, it is presumed that the testator was familiar with the circumstances at that time which could affect the construction of the will. 4 W. Bowe & D. Parker, *Page on Wills* § 30.08, at 63 (1961). Therefore, it is presumed that he knew of the two assessment programs in existence at the time of execution and of the possibility his particular assessment program might change by the date of his death. The language "at the date of my death" admits to the possibility that the change of assessment programs was envisioned and, therefore, creates an ambiguity as to which assessment program, RCW 84.40 (true and fair value) or RCW 84.34 (current use value), should now be used.

We hold that the price clause is ambiguous. In so holding we find that no error was committed by the trial court in admitting the testimony of the scrivener as to the actual intent of the testator. The scrivener testified that the testator intended to favor the appellants by providing for a reduced sale price in the option provision. This would be accomplished only by applying the "current use" assessment of RCW 84.34 under which the property was assessed at the date of testator's death.

This interpretation is fortified by the facts surrounding the drafting and execution which are admissible without a finding of ambiguity. The appellants had farmed the decedent's property since 1968. When appellants purchased land sandwiched by the decedent's land, they jointly rolled back the 2 miles of fence and farmed the parcels as one.

The appellants had lived and worked closely with the decedent on the farmland for 9 years before the will was executed and for 6 years thereafter. In addition to the close personal relationship, which influenced the testator's decision, there was a concern in the general farming community for the economic hardships created by the excessively high prices paid for land and for the resultant loss of farmland when land payments exceeded operational profits. That the testator intended something other than true market value of the land as determined by the assessor is buttressed by the language which required that cattle be purchased at fair market value.

The preference given the appellants is also reflected in the general trend of the testator's benevolences. Not only is the first option to purchase given the appellant; appellant is also made executrix with broad powers over the estate.

The testimony of the scrivener, admissible upon the finding of an ambiguity, is supported by the surrounding circumstances of the will. The trial court is affirmed.

UTTER, PEARSON, and ANDERSEN, JJ., and HENRY, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—The heart of the majority argument is contained in this paragraph:

> If, however, analysis is focused on the entire price clause, two possible "assessed" values exist. The language in question reads, "110% of the County assessed fair market value *at the date of my death*". The testator here expressly provided that the value to be used in the option was to be determined at the date of his death. Although the intent of the testator is to be viewed from the perspective of the date of execution, it is presumed that the testator was familiar with the circumstances at that time which could affect the construction of the will. Therefore, it is presumed that he knew of the two assessment programs in existence at the time of execution and of the possibility his particular assessment program might change by the date of his death. The language "at the date of my death" admits to the possibility that the

change of assessment programs was envisioned and, therefore, creates an ambiguity as to which assessment program, RCW 84.40 (true and fair value) or RCW 84.34 (current use value), should now be used.

(Citations omitted. Italics mine.) Majority, at 438. To find an ambiguity in this language for the reasons given by the majority seems to me nothing more than a judicial sleight of hand.

I would agree that if the testator had referred only to the "assessed value at the date of my death" there would be an ambiguity as to what value—current use or fair market—was meant. No doubt, however, was left by the testator as to the value upon which the price was to be based at the time of his death. It was clearly and expressly stated in the will: assessed fair market value.

As the majority concedes, the term "assessed fair market value" has only one possible interpretation: fair market value. This is not changed by the added words "at the time of my death". The meaning of this phrase to me seems obvious. Since land values and thus assessed values change, the testator wanted to make certain the "assessed fair market value" stated in the will would be that fair market value at the time of his death. The language is simple, straightforward, and unambiguous. The words of the will certainly may be challenged, but merely to assert an ambiguity cannot create an ambiguity when none exists.

As the majority states, the testator well may have known of two assessment programs. In his will, however, he explicitly and unequivocally refers only to "assessed fair market value".

The Court of Appeals should be affirmed.

DORE, J., and CUNNINGHAM, J. Pro Tem., concur with DOLLIVER, J.

Reconsideration denied February 21, 1985.