[No. 16383-1-III. Division Three. July 30, 1998.]

*In the Matter of the Estate of* RICHARD D. ELMER.

KENNETH ELMER, ET AL., *Appellants*, V. PATRICIA ROSE HARTT, *Respondent*.

---

*Robert B. Crary* of *Crary & Clark, P.S.*, for appellants.
*Mary C. Knox*, for respondent.

Kurtz, J. — Richard D. Elmer bequeathed the family business in equal shares to his children using the following language: "to all my children who survive me, and, by representation for their deceased parent, to all the children of any child of mine who dies before I do." At the time he made his will, Mr. Elmer's descendants were his three surviving sons and a granddaughter, the daughter of the son who predeceased him. When he died, a dispute arose between the three sons and the granddaughter regarding whether she inherited a one-fourth interest in the family business pursuant to the terms of the will. Based upon the language of the will and other evidence, the sons contend Richard Elmer intended to leave his business to them and keep it in the immediate Elmer family. Concluding that the language of the will unambiguously bequeathed an interest in the family business to the granddaughter as the child of the testator's deceased son, the court awarded her a one-fourth interest in her grandfather's business. We agree with the reasoning of the trial court and affirm its judgment.

Richard D. Elmer died testate on December 24, 1989, five months after drafting his will. Mr. Elmer had four sons with his former wife, namely: Allen, Kenneth, Wesley and Phillip Elmer. At the time of the execution of his will and at the date of his death, Mr. Elmer had only three surviving sons. Wesley Elmer died in 1984 leaving Patricia Hartt as his only child.

For many years, Richard Elmer conducted a family farming, ranching and timber operation in partnership with his brother, Chester Elmer, known as "Elmer Brothers." Mr. Elmer expressed his desire in his will that his brother, with the cooperation of his three sons, would carry on the family

business. The will stated that he had three children living and named Allen, Kenneth and Phillip Elmer. It did not name his deceased son, Wesley. The will did, however, specifically state in the gifting clause that Mr. Elmer's interest in "Elmer Brothers" pass "in equal portions . . . to all my children who survive me, and, by representation for their deceased parent, to all the children of any child of mine who dies before I do." Similar language appeared in a clause that bequeathed the remainder of his estate to his surviving children in the event his wife predeceased him. Dorothy Elmer, Mr. Elmer's second wife, survived him and received the remainder of his estate. The will named her as the estate's personal representative.

Dorothy Elmer filed a petition seeking probate of the will on January 22, 1990, listing herself and the three surviving sons as the only heirs. The probate was completed on June 25, 1990. Patricia Hartt was not notified of the probate proceedings.

On June 30, 1994, Ms. Hartt applied to reopen the probate of her grandfather's estate. The court determined that Ms. Hartt was a minor heir of Mr. Elmer at the time of probate and was, therefore, entitled to actual notice of the probate of his will. The court set aside the declaration of completion of the estate and vacated the decree of distribution. On December 28, 1995, Ms. Hartt applied for a determination of her rights under the will. After a hearing, the court decided she was an heir under the will and entitled to inherit one-fourth of her grandfather's interest in Elmer Brothers. This appeal follows.

Did the court err by interpreting the will in a manner inconsistent with Richard Elmer's intent? The Elmers contend the court failed to consider the language of the entire will, the circumstances surrounding the drafting of the will, and other evidence of Richard Elmer's intent. They assert the dispositive language of the clause disposing of the ranch, if read without straining its meaning, is consistent with Richard Elmer's intention to leave his estate to his sons and keep the property in the Elmer family. The

Elmers maintain Mr. Elmer made no mention or provision in his will for Wesley Elmer or Patricia Hartt because he intended to leave them nothing.

 The primary duty of a court called upon to interpret a will is to ascertain the intent of the testator. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985); *In re Estate of Riemcke*, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972). Although a will speaks at the time of death, the testator's intentions, as viewed through the surrounding circumstances and language, are determined as of the time of the execution of the will. *Bergeau*, 103 Wn.2d at 436; *In re Estate of Robinson*, 46 Wn.2d 298, 300, 280 P.2d 676 (1955). The testator is presumed to have known the law at the time of the execution of his will. *In re Estate of Patton*, 6 Wn. App. 464, 471, 494 P.2d 238, *review denied*, 80 Wn.2d 1009 (1972). The intent must, if possible, be derived from the four corners of the will and the will must be considered in its entirety. *Bergau*, 103 Wn.2d at 435; *In re Estate of Douglas*, 65 Wn.2d 495, 499, 398 P.2d 7 (1965). When, after reading the will in its entirety, any uncertainty arises about the testator's intent, extrinsic evidence, including testimony of the drafter, may be admitted to explain and resolve the ambiguity. *Bergau*, 103 Wn.2d at 436; *In re Estate of Torando*, 38 Wn.2d 642, 645, 228 P.2d 142, 236 P.2d 552 (1951).

 The language of Mr. Elmer's will, which caused the controversy, is as follows:

> I realize that I have three children living, born to my former wife and myself, the entire issue of that marriage, namely:
>
> Allen D. Elmer, son, born in 1950 in Spokane, Washington, and now residing in Spokane;
>
> Kenneth D. Elmer, son, born in 1952 in Newport, Washington, and now residing in Blanchard, Idaho; and
>
> Phillip D. Elmer, son, born in 1955 in Newport, Washington, and now residing in Bonners Ferry, Idaho.
>
> . . . .

> For many years, my brother, Chester B. Elmer, and I have conducted our family farming, ranching and timber operation in Spring Valley as a partnership, known as "Elmer Brothers." At the present time, none of my sons are active in that operation. I hereby bequeath and devise my interest in "Elmer Brothers," including real estate, farm and logging equipment, and the like, in equal portions, share and share alike, an undivided fractional interest each, *to all my children who survive me, and, by representation for their deceased parent, to all the children of any child of mine who dies before I do.* It is my desire that my brother have the right to carry on the family partnership, and to manage its assets and operations. I am confident that he and my sons can agree among themselves what to do in the event that he wishes to retire, one or more of them wish to become personally active in the operations, and/or one or more of them wish to sell some or all assets.

(Emphasis added.) There is no reference in the will to Mr. Elmer's deceased son, Wesley, or his granddaughter, Patricia Hartt. The court concluded that under the language of the will, Ms. Hartt is entitled to inherit her deceased father's share of the estate. We review the trial court's decision for abuse of discretion; discretion is abused when it is manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. *In re Estate of Niehenke*, 117 Wn.2d 631, 647, 818 P.2d 1324 (1991).

Arguing that the will shows it was the intention of Mr. Elmer that only his sons living at the time of his death or their children should inherit, the Elmer brothers rely upon *In re Estate of Price*, 75 Wn.2d 884, 454 P.2d 411 (1969). In *Price*, the testator had one child die before he drafted his will. His will stated that he had four surviving children and he left the residue of his estate to his then surviving children. No provision was made for his grandchildren. Another of his children died before the testator and after the will was drafted. This child's children contended they should inherit their deceased parent's portion of the estate by representation. The court found it was the testator's intention to leave his estate to only his surviving children, not his grandchildren. The court stated:

If the testator had wanted to provide for grandchildren, it would have been easy to do so in the customary way, providing that the children of any deceased child should take his share, per stirpes, or any language to that effect. It would be strange indeed if a testator, wishing to provide for his grandchildren in the event of the death of his child prior to his own death, should feel that the end could best be accomplished by omitting to mention such grandchildren in his will and relying upon a court to find his will ambiguous and contrive a way to let those grandchildren take by virtue of a statute.

*Price*, 75 Wn.2d at 888. This case differs from *Price* in that Mr. Elmer did not omit his grandchildren. He provided for his grandchildren with language in his will clearly stating that they take by representation for their deceased parent.

■ The Elmers also contend that the language "any child of mine who dies before I do" is in the future tense and thus excludes Mr. Elmer's son who was dead at the time the will was written. However, a will is presumed to speak as of the time of the testator's death. *In re Estate of Levas*, 33 Wn.2d 530, 535-36, 206 P.2d 482 (1949). When construed as of the time of Mr. Elmer's death, the phrase applies equally to all of his children, including Wesley.

The Elmers contend Ms. Hartt is not a pretermitted heir nor allowed to take under the antilapse statute. Washington's antilapse statute provides that when an estate is devised or bequeathed to a relative of the testator, and the devisee dies before the testator leaving lineal descendants, those descendants take the estate. RCW 11.12.110. Here, it is not necessary to apply the antilapse statute because Mr. Elmer made a provision for the situation of a child predeceasing him. Under the terms of his will, the child's child takes by representation for the deceased parent.

■■ The Elmers believe the intent of Mr. Elmer's will was to disinherit Wesley Elmer and Ms. Hartt. Strong evidence is required before assuming a testator intended to disinherit a branch of the testator's family. Lack of clarity in a will weighs against disinheritance. *Niehenke*, 117 Wn.2d at 640. Where there is room for construction, that meaning which favors those who would inherit under the

laws of intestacy will be adopted. *Estate of Kvande v. Olsen,* 74 Wn. App. 65, 70, 871 P.2d 669, *review denied,* 124 Wn.2d 1021 (1994).

Mr. Elmer's intention is best determined by his specific language that his bequest was to the children of *any* deceased child. The words when given their ordinary meaning are not ambiguous. The court's decision that Ms. Hartt is entitled to inherit the share of her deceased father is not manifestly unreasonable.

Ms. Hartt contends this appeal was frivolous and undertaken for the purpose of delaying her right to receive her interest in the estate. She claims she is entitled to attorney fees under RCW 11.96.140, RAP 18.1 and *Streater v. White,* 26 Wn. App. 430, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980). The Elmers' appeal, although not successful, had merit and was not frivolous.

■ RCW 11.96.140 provides:

> Either the superior court or the court on appeal, may, in its discretion, order costs, including attorneys' fees, to be paid by any party to the proceedings or out of the assets of the estate . . . as justice may require.

This statute allows broad discretion to the appellate court to determine the fees allowable "as justice may require." RCW 11.96.140. Ms. Hartt has incurred attorney fees she would not have if she had properly been designated as a beneficiary from the beginning of probate. This appeal benefited the estate by determining that Ms. Hartt is a beneficiary of the will and should receive a portion of the assets.

The judgment of the trial court is affirmed. Because Ms. Hartt was a beneficiary under the terms of the will, she was entitled to notice and we need not decide that issue. Ms. Hartt is awarded her reasonable attorney fees on appeal, payable from the estate.

SCHULTHEIS, C.J., and KATO, J., concur.