[No. 5656-2-III.   Division Three.   June 26, 1984.]

*In the Matter of the Estate of*
JOHN S. WENDL.

JACK GUSTAVEL, *Appellant,* FRANK E. WENDL,
*as Personal Representative, Respondent.*

*Kelly N. Brown* and *Irwin, Friel & Myklebust,* for appellant.

*Harry E. Hennessey, Garry H. Gibson,* and *Hennessey, Curran & Blair,* for respondent.

THOMPSON, J.—Jack Gustavel appeals an adverse ruling on summary judgment with respect to the testator's intent in disposing of his estate. We affirm.

John S. Wendl died testate, having executed a handwritten will by filling in most of the blanks on a preprinted form. The will was admitted to probate, but when Frank Wendl, the executor, submitted his final report and petition

for distribution, Jack Gustavel filed an objection.

The testator, John Wendl, married Eunice Zittel Wynn, who had one daughter from a prior marriage, Alice Wynn Gustavel. Alice Gustavel has children and grandchildren. John and Eunice Wendl had no children, but John Wendl was survived by an unmarried sister, Frances Wendl, and a brother, Frank Wendl. Frank Wendl has no children of his own but has stepchildren.

Eunice, who predeceased John in 1978, died testate, leaving her entire estate valued at $342,713.70 to her daughter Alice. Her will revealed that both she and John had strictly segregated their property.

Through a joint bank account, John received $16,478.26 at the time of Eunice's death. The house John resided in at the time of his death was also his wife's property.

In paragraph 4 of John's will, entitled "DISPOSITION OF ESTATE", he printed in ink:

I give, devise and bequeath unto Frank E Wendl and Frances R Wendl my entire estate (½ to each) except:
To Alice $5,000.00
[To Alice's children and grandchildren, $1,000 each.]

He left the "RESIDUE" clause, paragraph 6, blank. On page 2 of the will, he handwrote in pencil:

My wishes are that Frank & Frances use my bequeath for their own desires but I would like it if they made some gifts to churches etc for me

Also I'd like it if in their wills they pass on what they cant use to Alice & her descendents

Alice's son Jack contends the will created only life estates in Frank and Frances or in the alternative a trust for as long as they lived. The court granted Frank's motion for summary judgment and denied Jack's motion for reconsideration. Both the executor and Jack submitted affidavits containing statements attributed to John concerning his estate and its disposition.

Jack first argues the trial court erroneously refused to consider extrinsic evidence in construing the will. The trial court found the language of John's will "clearly evidence[d]

[his] intention". Thus, the language was unambiguous and "require[d] no extrinsic evidence to either explain it or to provide a framework within which it [could] be construed".

 A distinction should be made between will "interpretation" and will "construction". While interpretation is the "process of discovering the meaning or intention of the testator from permissible data", construction, in a technical sense, is "assigning meaning to the instrument when the testator's intention cannot be fully ascertained from proper sources". T. Atkinson, *Wills* § 146, at 809–10 (2d ed. 1953). Construction is predictably necessary only when interpretation fails to answer the questions relevant to disposition of the testator's property. T. Atkinson, at 810. "Indeed, if the meaning of the will is clear, equity will refuse to entertain a suit to construe." T. Atkinson, at 808. *See also In re Estate of Riemcke,* 80 Wn.2d 722, 729, 497 P.2d 1319 (1972) (where intent is clearly manifested in the language of the whole will, technical rules of construction may not be invoked to thwart such intent).

Extrinsic evidence is not admissible to vary or supplement the terms of the will. T. Atkinson, at 810. Whenever possible, the "actual intent" of the testator should be garnered from the four corners of the will "unaided by extrinsic facts". *In re Estate of Riemcke,* at 729–30. However, even where no ambiguity exists in the will language so as to invoke the rule against construction, it is still necessary to construe and give effect to the testator's intent from the will language. *In re Estate of Riemcke,* at 728. Thus, though in construing intent from the words of the will, the court may not rewrite the will, it is nevertheless appropriate to consider "the situation as it existed when the will was drawn" with an awareness of "all the surrounding circumstances". *Anderson v. Anderson,* 80 Wn.2d 496, 499, 495 P.2d 1037 (1972).

In this case, Jack asks the court to fit the extrinsic evidence of John's intentions into the "surrounding circumstances" rule. But surrounding circumstances pertain to objective factors, not contemporaneous statements of John.

*See, e.g., In re Estate of Newbert,* 16 Wn. App. 327, 555 P.2d 1189 (1976) (circumstances to be considered in determining if the testator intended a class gift: the fact of whether there is a natural class among the beneficiaries, the relationship of the testator to the objects of his bounty, the subject matter of the gift, and the skill of the draftsman of the will).

Regardless of ambiguity, that which the trial court could consider under the surrounding circumstances rule would include that John drafted his own will, apparently without the aid of an attorney; that John's wife, who predeceased him, left her sizable estate to the will challenger's family; that John had no natural children but had a stepchild; and that John's sister had no children, but his brother had stepchildren. The trial court, as it correctly determined, could not consider John's oral declarations unless the will language was ambiguous. The rule is logical because such evidence is highly susceptible to fraud. It is inherently unreliable. 4 W. Bowe & D. Parker, *Page on Wills* § 32.9, at 271 (1961).

Jack next contends John left the residue paragraph blank because he believed the disposition stated in paragraph 4 spoke to all situations. He argues if the will is to be given the trial court's interpretation, a lapsed bequest would have passed intestate because neither Frank nor Frances would be survived by issue. Jack points to the fact the language of page 2 was not indented nor preceded by a comma and the first word is not capitalized. Thus, he maintains the will is just as susceptible to the interpretation that John intended to except the page 2 interest from the estate to Frances and Frank as is the interpretation he only intended to except the specific bequests listed to the stepchildren and step-grandchildren. Jack further argues John failed to use the residue paragraph when he was obviously aware of the possibility that Frank or Frances could predecease him. Therefore, he concludes, extrinsic evidence should have been used to explain this ambiguity.

The trial court correctly decided that these factors do not

give rise to an ambiguity so as to make Jack's construction of the will language just as logical as the trial court's. First, paragraph 4 is printed in ink with a space left after the list of specific gifts; the language at page 2 is written, not printed, and in pencil, not ink. Next, the writing at page 2 should not be construed as beginning with the lower case rather than upper case letters. Typically, John used lower case rather than upper case letters when writing. Finally, the absence of the comma does nothing to create an ambiguity in paragraph 4. Again, a review of the will in its entirety reveals that John generally underpunctuated, even to the extent of not using periods at the ends of his sentences. Jack's reasons are insufficient to support the conclusion that an ambiguity exists in paragraph 4. While the alternate use of Frances and Frank in the executor/executrix paragraph does evidence an awareness by John that his brother or sister could predecease him, this circumstance alone is insufficient to render an otherwise unambiguous will susceptible to more than one meaning.

Jack contends the trial court misconstrued the will. Since the residue paragraph was left blank, he argues, John must have believed that paragraph 4 disposed of his entire estate. Thus, he concludes, given the presumption that a testator intends to dispose of his entire estate and given John's awareness that Frances or Frank could predecease him, the language of page 2 was intended as a fee remainder, or else it was superfluous.

██ This court endorses a liberal construction of wills. *In re Estate of Taylor,* 32 Wn. App. 199, 203, 646 P.2d 776 (1982). However, we must glean intent where possible from the language of the will itself. *Taylor,* at 200. Courts have traditionally been loathe to find a life estate where the will language indicates a fee simple unless there is an obvious doubt raised by the will language itself. 4 W. Bowe & D. Parker, at 248. The unambiguous language of the will evidences John's intent to leave his entire estate to his brother and sister with only small specific bequests to his stepchildren. Indeed, the will writer does not simply say he

leaves his estate to his brother and sister; he specifically uses the term "entire" estate. Also, the language at page 2 is in suggestive terms only. Thus, since John's intent is apparent from the face of the will, it is unnecessary to delve into the rules of construction of the document as Jack suggests.

Jack asserts the trial court's interpretation makes page 2 of the will superfluous since deletion results in the same construction. However, Jack conceded that wills often contain unnecessary language, and here, it must be remembered the drafter was a lay person. The issue becomes whether the language at page 2 is precatory (advisory only) or imperative.

First, Jack relies upon *In re Estate of Hochbrunn,* 138 Wash. 415, 244 P. 698, 49 A.L.R. 7 (1926), for support for the proposition that seemingly precatory language, by context and use, may be construed to create a trust for one other than the apparent fee taker. The following language was construed as a precatory trust.

> "FIRST. . . . I give and bequeath to my brother Henry Hochbrunn . . . the entire residue and remainder of my estate . . . with the *special* request . . . that he pay to my sister, Elisa Hochbrunn, . . . the sum of Ten Thousand ($10,000.00) Dollars out of the proceeds of my estate *as soon as possible* after my decease; the same may be paid to her by *installments, if necessary, but request that no unnecessary delay be made,* provided she may survive me."

(Italics ours.) *In re Estate of Hochbrunn,* at 416.

Precatory words, under certain circumstances, have been held to be imperative and sufficient to create a trust. This was so in *Hochbrunn* because the amount given to the testator's sister was definite, not left to discretion, and the language of the will clearly manifested the "relatively necessitous circumstances on the part of the sister, which of itself show[ed] the intent of the testator." *Hochbrunn,* at 418. Also, the timing of the gift was in careful and specific terms. "'[T]he same may be paid to her by installments, if necessary.' . . . 'but request that no unnecessary delay be

made.'" *Hochbrunn,* at 418. The court also noted that the precatory term "request" was made "more important" (imperative) by the qualifying word "special". *Hochbrunn,* at 418.

However, as a general rule precatory words are insufficient to create a testamentary trust and if the grantee has discretion to use the property for himself, the court will not find a trust. *In re Estate of Brooks,* 20 Wn. App. 311, 313, 579 P.2d 1351 (1978).

As stated in *Brooks,* at 314, the relevant extrinsic circumstances to be considered "[w]hen necessary" to determine whether a testator intended a testamentary trust are:

> (1) the imperative or precatory character of the words used; (2) the definiteness or indefiniteness of the property; (3) the definiteness or indefiniteness of the beneficiaries or of the extent of their interests; (4) the relations between the parties; (5) the financial situation of the parties; (6) the motives which may reasonably be supposed to have influenced the settlor in making the disposition; (7) whether the result reached by construing the transaction as a trust or not a trust would be such as a person in the situation of the settlor would naturally desire to produce.

*In re Estate of Brooks,* at 314 (quoting Restatement (Second) of Trusts § 25, comment *b,* at 69 (1959)). We find the words in John's will are clearly precatory with no "special" qualifiers. The amount to go to the stepchildren, if any, is not quantified; Frances and Frank are given unqualified discretion to spend as they wish. There is no indication in the will or the affidavits of the financial position of the allegedly intended beneficiaries, but it is undisputed that John wanted his blood relatives, Frances and Frank, to be cared for and comfortable during their remaining years. It is also undisputed that Eunice had previously left her sizable estate to the Gustavels.

It could be argued that "the motives which may reasonably be supposed to have influenced the settlor . . ." should mitigate in favor of finding a material issue of fact from Jack's affidavit. However, extrinsic evidence is to be

utilized only "[w]hen necessary", *Brooks,* at 314, and the inherently unreliable extrinsic evidence of what a testator/settlor stated before, after, or at the time of the will drafting is inadmissible where the will language is not equivocal. *In re Estate of Newbert, supra; Siegley v. Simpson,* 73 Wash. 69, 131 P. 479 (1913). Mere argument that the language creates a trust without more is insufficient to go outside of the extrinsic physical facts and circumstances to the less reliable extrinsic oral declarations of the testator. "Declarations of [the settlor] are not admissible . . . to show that one named as beneficiary took in trust, or that one named as trustee is a beneficiary . . ." (Footnote omitted.) 4 W. Bowe & D. Parker, at 273.

It appears from the court's order that the judge not only did not consider the inadmissible extrinsic evidence of John's declarations, but also did not consider the objective extrinsic evidence of facts and circumstances. If this is indeed what happened, it was harmless error. For Jack to prevail, John's declarations must be considered. In Washington, the parol evidence rule is one of substance and not one of evidence. *Barber v. Rochester,* 52 Wn.2d 691, 328 P.2d 711 (1958); *Peter Pan Seafoods, Inc. v. Olympic Foundry Co.,* 17 Wn. App. 761, 766, 565 P.2d 819 (1977); *Diel v. Beekman,* 1 Wn. App. 874, 465 P.2d 212 (1970). Given the four corners of the will and the undisputed objective circumstances, the court sitting as the fact finder would have had no choice as a matter of law, but to reject John's oral declarations. The trial court correctly concluded John's extrinsic statements should not be considered as a surrounding "circumstance" for determining his meaning or the effect to be given the will language. Nor is such evidence admissible for the purpose of explaining the will language which was correctly found to be patently and latently unambiguous and unequivocal. Finally, the extrinsic evidence presented by affidavit does not otherwise raise a triable issue of fact.

The judgment of the trial court is affirmed.

GREEN, A.C.J., and MCINTURFF, J., concur.