IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of PATRICIA A. BERG, the Marital Trust of S. EDWARD BERG, and the Trust of PATRICIA A. BERG, | No. 82328-1-I |
| Deceased, | DIVISION ONE |
| RANDALL A. BERG, | UNPUBLISHED OPINION |
| Appellant, | |
| v. | |
| KATHLEEN M. MYRON, as Personal Representative for the Estate of Edward Berg, as Personal Representative for the Estate of Patricia Berg, and as Trustee under the Patricia A. Berg Trust, | |
| Respondent. | |

COBURN, J. — Two siblings dispute whether their deceased mother intended to exercise her limited power of appointment (LPOA), which affected both of the siblings' interests in the family scaffolding company. At trial, the court improperly looked outside the four corners of the will and considered extrinsic evidence in making its determination that the mother did not intend to exercise her LPOA. Because the mother's will is not ambiguous, we hold that the mother did exercise her limited power of appointment and reverse the trial court.

We remand for further proceedings.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Patricia A. Berg (Patricia) and S. Edward Berg (Edward) were married for 65 years.[1]  They had six children together, two of whom are central to this action: Randall Berg (Randy) and Kathleen Myron (Kathy).  During Edward and Patricia's marriage, they founded a scaffolding company (Berg Equipment) in 1969.  Edward ran day-to-day operations while Patricia handled financial and accounting responsibilities.  In 1980, Edward suffered a stroke, and Randy was named vice president of operations after having worked at Berg Equipment since his teenage years.  Kathy has served as treasurer of Berg Equipment for about 21 years and more recently has served as secretary treasurer for the past seven years.

Edward's will was admitted to probate following his death in January 2014. He appointed Patricia as personal representative of his estate, and named Kathy as successor personal representative.  Edward's will created two credit shelter trusts: an Exemption Trust and a Marital Trust.

Patricia was the sole beneficiary of both trusts, and paragraphs 3.3(a) (Exemption Trust) and 4.3(b) (Marital Trust) of Edward's will contained identical language giving Patricia limited testamentary power of appointment over the remainder of both the Exemption Trust and the Marital Trust:

> Limited Power of Appointment.  I give my wife a limited testamentary power of appointment to direct how the remaining trust assets shall be distributed.  *My wife may exercise this power*

---

[1] Because multiple family members share the same surname, we refer to all family members by their first names as referred to in their briefing for clarity and consistency.

*in any valid manner*, outright or in trust, in any amounts and proportions; provided that if any of my descendants survive my wife, this power shall be exercisable only in favor of any one or more of my descendants.  If this power is exercised by appointment of any assets in trust, the appointment shall be effective even though the terms of the trust provide that the trust assets shall be distributed upon termination of the trust to a beneficiary other than my descendants if none of my descendants are then living.  This power may not be exercised, however, in favor of my wife, my wife's estate, my wife's creditors or the creditors of my wife's estate or in the manner described in Section 2041(a)(3) of the Internal Revenue Code.  *My wife must expressly refer to and exercise this power in her valid Will or codicil for the appointment to be effective.*

(Emphasis added.)  Further, each of the trusts provided the following regarding alternative disposition:

Alternative Disposition.  To the extent that my wife does not effectively exercise the limited testamentary power of appointment, the remaining assets shall be distributed in the same manner as my estate under Section 2.3 as if my wife had predeceased me.

Section 2.3(b) of Edward's will provided how his interest in the stock of Berg Equipment should be distributed among his children:

| | |
|---|---|
| Thomas E. Berg | 5% |
| Sharon L. Griffin | 5% |
| Randy A. Berg | 25% |
| Christine C. Delaney | 10% |
| Kathy M. Myron | 55% |

Following Edward's death, Patricia consulted with attorney Ryan Rehberg of Rehberg Law Group about her own estate planning and creating her will.  On September 22, 2014, Patricia executed her will and the Patricia A. Berg Trust (Patricia's trust).  Paragraph 1.1 of her will addresses her personal effects.

3

Paragraph 1.2 addresses the remainder of her estate:

Remainder Estate. All the rest, residue and remainder of my estate, of whatever nature and wherever situated, of which I may own or be entitled at the time of my death, *including property over which I may have a power of appointment which I have not otherwise exercised, released or refused in writing, to exercise,* I give, devise and bequeath to the Trustee of the PATRICIA A. BERG TRUST created under a Trust Agreement dated September 22, 2014, by myself as Trustor, which has been signed prior to this Will and is not in full force and effect, as an addition to the principal of said Trust.

(Emphasis added.)

Section B.2.3 of Patricia's trust provided how any interest in Berg Equipment stock should be specifically distributed among her children:

| | |
|---|---|
| Thomas E. Berg | 5% |
| Sharon L. Griffin | 5% |
| Randy A. Berg | 55% |
| Christine C. Delaney | 10% |
| Kathy M. Myron | 25% |

In January 2016, Patricia met with attorney Sabrina Go of Rehberg Law Group to discuss implementing possible amendments to Patricia's will. However, Patricia never followed through, and no amendments were executed.

Patricia died on February 17, 2018, and Patricia's will was subsequently admitted to probate. Patricia's will appointed Kathy as the personal representative of her estate, and her trust appointed Kathy as successor trustee of her trust.

4

On August 12, 2019, through counsel, Kathy notified Randy that she was taking the position that Patricia did not exercise her LPOA in Edward's will. She explained that she intended to distribute Edward's share of the Berg Equipment stock as he intended, which gave Kathy 55 percent and Randy 25 percent. Kathy also explained that she would distribute Patricia's share of Berg Equipment according to Patricia's trust, which gave Kathy 25 percent and Randy 55 percent. In total, Randy and Kathy would own equal shares of Berg Equipment.

On August 30, 2019, Randy initiated a judicial proceeding under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. Randy petitioned the court requesting that it make a finding that Patricia effectively exercised her LPOA, and also that the court direct Kathy to immediately distribute the Berg Equipment stock as provided in section B.2.3 of Patricia's trust.

In November 2020, the court held a bench trial and heard testimony from various witnesses, including family members, attorneys Ryan Rehberg and Sabrina Go from Rehberg Law Group, and also expert witness Professor Karen Boxx. The court also considered various exhibits related to the creation of Patricia's will as well as several exhibits regarding Patricia's 2016 meeting with Go.

Professor Boxx, a professor at the University of Washington School of Law, testified that although Patricia's will was not perfectly drafted, the language in Paragraph 1.2 of Patricia's will was certainly sufficient to exercise power of appointment under former RCW 11.95.060(2) (1989). She testified that the prior

version of this statute made it harder for individuals to exercise their power of appointment because the will had to reference the power and the date of the power.

Rehberg, the attorney Patricia initially met with to discuss the creation of her 2014 will, testified that he did not personally prepare her will, but he knew someone at his law firm did. Rehberg conceded that he had discussed the LPOA with Patricia and whether she wanted to exercise it or not, but after reviewing his own notes, could not recall if she wanted to exercise her LPOA.

The court also heard from Sabrina Go, an attorney at Rehberg Law Group, regarding her involvement with the administration of Patricia's estate. Go, who was not involved in the drafting of Patricia's will, met Patricia for the first time when Go witnessed the signing of Patricia's will not long after Go started working at Rehberg Law Group. Go could not recall much from that first meeting, but testified that the language of paragraph 1.2 of Patricia's will contained standard form language that Rehberg typically uses when creating wills.

Both Rehberg and Go reviewed exhibits of Go's notes and communications related to the January 2016 meeting, and based on those exhibits, testified that they believed the LPOA language was not inserted into Patricia's will at her direction.

According to Go's notes, at the 2016 meeting that discussed possible amendments, Rehberg assured Patricia that she did not have to change her documents because she already had something in place. At trial, Rehberg testified that he could not recall what that was in reference to. After trial, the

6

court issued its written findings of facts and conclusions of law. The court concluded that paragraph 1.2 of Patricia's will did not manifest her intent to exercise her LPOA. It gave weight to the testimony of Rehberg and Go, who testified that paragraph 1.2 of Patricia's will "was a 'standard general paragraph – a catch-all language' that they use", and it "was not added at Patricia's request nor was it added in order to address Patricia's [LPOA] under Edward's will." It also took into consideration that Patricia worked with Go after the execution of her will to make changes, but Patricia never made the final decision to go forward and had not retained their firm.

The court concluded that "Paragraph 1.2 of Patricia's Will did not effectively exercise the [LPOA] granted to her by Edward's Will." It reiterated, "Such a –matter of routine – language that is added by the attorneys in every Will does not manifest Patricia's intention of exercising her [LPOA]." The court also concluded that paragraph 1.2 in Patricia's will is a "residuary estate clause which contains no specific reference to the power granted by Edward's Will and uses language which indicates Edward's 50% interest in Berg Equipment would be considered part of Patricia's Estate."

Finally, the court ordered that "Kathy shall immediately distribute the shares in Berg Equipment to the children in the percentage specified in Patricia's Trust (i.e., [Randy] 40%, [Kathy] Myron 40%, Christine DeLaney 10%, Thomas Berg 5%, and Sharon Griffin 5%)."

Randy appeals.

7

DISCUSSION

Standard of Review

The parties disagree over which standard of review should apply to the issues in this case.

Kathy[2] contends that this court should review for abuse of discretion as to factual determinations. She cites to cases in which evidentiary rulings and sanction decisions were at issue.[3] Evidentiary rulings and sanction decisions are not at issue here.[4] Kathy also relies on <u>Franklin County Sheriff's Office v. Sellers</u>, 97 Wn.2d 317, 329–30, 646 P.2d 113 (1982), for the proposition that even in cases of mixed questions of law and fact, review should still be for an abuse of discretion. That was not the holding in <u>Franklin</u> where our Supreme Court explained the proper scope of review of mixed issues of law and fact.[5]

---

[2] Because Kathy is the personal representative of the estates and trusts at issue, we refer to the respondent as Kathy.

[3] <u>Univ. of Wash. Med. Ctr. v. Dep't of Health</u>, 164 Wn.2d 95, 104, 187 P.3d 243 (2008) (discussing trial court's evidentiary ruling); <u>Highland School Dist. No. 203 v. Racy</u>, 149 Wn. App. 307, 312, 202 P.3d 1024 (2009) (reviewing trial court's sanction decision).

[4] Randy did not assign error to the trial court's evidentiary rulings.

[5] The Supreme Court explained:

> Mixed questions of law and fact, or law application issues, involve the process of comparing, or bringing together, the correct law and the correct facts, with a view to determining the legal consequences. As we said in <u>Daily Herald Co. v. Department of Employment Security</u>, 91 Wn.2d 559, 561, 588 P.2d 1157 (1979), mixed questions of law and fact exist 'where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term.' We have invoked our inherent power to review de novo those issues.
>
> De novo review in these cases refers to the inherent authority of this court to determine the correct law, independently of the agency's decision, and apply it to the facts as found by the agency and upheld on review by this court.

The trial court listed 39 findings of fact. Randy challenged findings of fact numbers 23, 33, 34, 35, 36, 37 and 39. We conclude the challenged findings are actually conclusions of law, including interpretations of the will.

It is well settled that an appellate court reviews de novo the trial court's interpretation of a will. King v. Snohomish County, 146 Wn.2d 420, 423–24, 47 P.3d 563 (2002); In re Est. of Wright, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008); Woodard v. Gramlow, 123 Wn. App. 522, 526, 95 P.3d 1244 (2004). Because "'[a] conclusion of law is a conclusion of law wherever it appears,'" any conclusion of law erroneously denominated a finding of fact will be subject to de novo review. Robel v. Roundup Corp., 148 Wn.2d 35, 43, 59 P.3d 611 (2002) (alteration in original) (citing Kane v. Klos, 50 Wn.2d 778, 788, 314 P.2d 672 (1957)).

### Ambiguity

Randy first contends that paragraph 1.2 of Patricia's will was not ambiguous and sufficiently manifested her intent to exercise her LPOA. We agree.

"When called upon to construe a will, the paramount duty of the court is to give effect to the testator's intent." In re Estate of Bergau, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). "The intent must, if possible, be derived from the four corners of the will and the will must be considered in its entirety." In re Estate of Mell, 105 Wn.2d 518, 524, 716 P.2d 836 (1986) (citing Bergau, 103 Wn.2d at 435). "The testator is presumed to have known the law at the time of execution

Franklin, 97 Wn.2d at 329-30 (citations omitted).

9

of his will." Mell, 105 Wn.2d at 524 (citing In re Estate of Patton, 6 Wn. App. 464, 471, 494 P.2d 238 (1972)). "If, after reading the will in its entirety, any uncertainty arises about the testator's intent, extrinsic evidence, including testimony of the drafter, may be admitted to explain and resolve the ambiguity." Mell, 105 Wn.2d at 524 (citing Bergau, 103 Wn.2d at 436).

*A. Express Referral*

The parties do not dispute that Patricia was required to manifest her intent to exercise the LPOA. See former RCW 11.95.060(2) (1989)[6] ("The holder of a testamentary power may exercise the power only by the powerholder's last will, signed before or after the effective date of the instrument granting the power, that manifests an intent to exercise the power.").

Kathy contends Patricia did not manifest such an intent because paragraph 1.2 of Patricia's will did not meet Edward's requirements in order to effectively exercise the LPOA. Kathy argues that paragraph 1.2 did not expressly refer to the power granted by Edward's will.

The language in Edward's will regarding the LPOA stated, "My wife must expressly refer to and exercise this power in her valid will or codicil for the appointment to be effective." Paragraph 1.2 of Edward's will required Patricia to expressly refer to and exercise "this power." It did not require Patricia's will to specifically refer to Edward's will.

---

[6] Former RCW 11.95.060 (1989) was repealed on January 1, 2022, but it applies to the Findings of Fact and Conclusions of Law entered on January 8, 2021.

Paragraph 1.1 of Patricia's will addressed her personal effects.  Paragraph 1.2 discussed the remainder of her estate and provided:

> All the rest, residue and remainder of my estate, of whatever nature and wherever situated, of which I may own or be entitled at the time of my death, *including property over which I may have a power of appointment* which I have not otherwise exercised, released or refused in writing, *to exercise, I give, devise and bequeath to the Trustee of the PATRICIA A. BERG TRUST* created under a Trust Agreement dated September 22, 2014, by myself as Trustor, which has been signed prior to this Will and is not in full force and effect, as an addition to the principal of said Trust.

(Emphasis added.)  This language is an express reference to and exercise of her power.

Edward's will did not require Patricia to reference Edward's will specifically in order to exercise her LPOA. Thus, Patricia's will was not ambiguous.

B. *Standard Form Language*

Attorney Rehberg testified that he had done some estate planning and consulting with Patricia at different times, though he could not remember how many times or when he first met with her.  He testified that he was not the one who drafted her will and did not know who the specific person was at his firm who drafted the document.  Rehberg further testified that the language in paragraph 1.2 of Patricia's will that stated "property over which I may have a power of appointment, which I've not otherwise exercised, released, or refused in writing" was language used in the firm's standard form used in creating estate planning documents.

Rehberg was the notary at the time Patricia executed her will and trust on September 22, 2014.  He could not independently recall the discussion during

the signing about the terms of her will or trust. He testified that he recalled having had a conversation with Patricia about the LPOA, but his notes did not indicate what was clearly discussed, and he could not recall, based on his own notes, whether she wanted to exercise or not exercise her power of appointment. Attorney Go joined the Rehberg Law Group shortly before Patricia executed her will and acted as a witness to the execution of the will, but she was not involved in its preparation. That was the first time Go met with Patricia but Go could not recall much from that meeting.

The trial court concluded that "[t]he language in [Paragraph 1.2] is conditional that the drafting attorneys include routinely in their draft of Wills. Such a – matter of routine – language that is added by the attorneys in every Will does not manifest Patricia's intention of exercising her limited power of appointment."

Kathy concedes that "[i]f Patricia intended to use the limited power, then there is no dispute that the language [in Paragraph 1.2] would have been effective to do so." However, Kathy argues, that "[m]ere sufficiency of the language is not enough to establish Patricia's real intent, particularly when it is Patricia's intent that makes the language legally sufficient." (Emphasis in original.) Kathy is wrong. Intent must, if possible, be derived from the four corners of the will and the will must be considered in its entirety. Mell, 105 Wn.2d at 524.

The language in paragraph 1.2 was not ambiguous because it contained standard form language.

12

Extrinsic Evidence

Kathy relies on Matter of Estate of Wendl, 37 Wn. App. 894, 898, 684 P.2d 1320 (1984), to support her contention that "surrounding circumstances" are relevant without a finding of ambiguity. Kathy misconstrues the notion that the evidence the trial court considered below was consistent with the rule related to "surrounding circumstances."

"[T]hough in construing intent from the words of the will, the court may not rewrite the will, it is nevertheless appropriate to consider 'the situation as it existed when the will was drawn' with an awareness of 'all the surrounding circumstances.'" Wendl, 37 Wn. App. at 897 (quoting Anderson v. Anderson, 80 Wn.2d 496, 499, 495 P.2d 1037 (1972). But the surrounding circumstances must pertain to objective factors. Wendl, 37 Wn. App. at 897. In the instant case, these facts and circumstances must relate to the time when the will was executed. As our Supreme Court explained in Anderson,

> The intent must be gathered when possible from the words of the will, construed in their natural and obvious sense. Further, in construing a will, the court is faced with the situation as it existed when the will was drawn and must consider all the surrounding circumstances, the objects sought to be obtained, and endeavor to determine what was in the testator's mind when he made the bequests, and the court must not make a new will for him or warp his language in order to obtain a result which the court might feel to be right.

80 Wn.2d at 499 (citation omitted).

During trial, Kathy introduced and the trial court considered communications related to a meeting in January 2016, more than a year after Patricia executed her will. Further, the trial court considered testimony from all of

13

Patricia's heirs, as well as attorneys Rehberg and Go as to their beliefs based on extrinsic evidence, regarding whether Patricia intended to exercise her LPOA and whether the distribution indicated in her trust applied to all of the interest in Berg Equipment or just her 50 percent share of the Berg Equipment.

According to Patricia's trust, after the trustor's death, the trustee "shall divide and allocate any interest" the trust has in Berg Equipment as indicated in the trust, which included 55 percent of Berg Equipment to Randy, and 25 percent to Kathy. That interest, according to paragraph 1.2 in Patricia's will, included "property over which I may have a power of appointment."

In concluding that Patricia did not intend to exercise her LPOA, the trial court considered extrinsic evidence beyond objective facts of the surrounding circumstances at the time Patricia's 2014 will was drawn. This was improper.

<u>Administration of Trust</u>

Randy next contends that the trial court erred by failing to enter findings of facts or conclusions of law regarding Kathy's failure to complete administration of Patricia's trust within the time mandated by the trust, and he requests the court remand this issue to the trial court.

In his petition, Randy requested that the court "enter an order . . . requiring Kathy to immediately distribute the shares in Berg Equipment." Following trial, the trial court expressly ordered, "Kathy shall immediately distribute the shares in Berg Equipment to the children in the percentage specified in Patricia's Trust." Randy did not make a claim or request relief that would warrant the trial court to make additional findings of fact and conclusions of law.

14

Any error that may exist from the trial court not making specific findings of fact and conclusions of law as to Kathy's administration of Patricia's trust was harmless.

<u>Attorney's Fees</u>

Both Randy and Kathy request attorney fees and costs on appeal under former RCW 11.96A.150(1) (2007) and RAP 18.1. We have discretion to award reasonable attorney fees and costs in such a manner as this court determines to be equitable. The award may be from any party to the proceedings, from the assets of the estate or trust involved in the proceedings, or from any non-probate asset that is the subject of the proceedings. Former RCW 11.96A.150(1) (2007). "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." <u>Id.</u>

Randy, during oral argument, suggested that the award of attorney fees and costs come from Kathy personally. However, Kathy is not a party to the proceedings. The petition related to Edward's trust and Patricia's trust and estate. Kathy is the personal representative of Patricia's estate, the successor trustee of Patricia's trust, and the successor personal representative of Edward's estate. This suit does not involve a claim against Kathy personally.

Because Randy is the prevailing party, we award him fees and costs on appeal to be taken from Patricia's estate.

## CONCLUSION

We hold that Patricia manifested her intent to exercise her power of appointment in her will, which was not ambiguous.  The trial court improperly considered extrinsic evidence in concluding otherwise.  We award attorney fees and costs to Randy.

Reverse and remand for further proceedings.

_Coburn, J._

WE CONCUR:

_Bowman, J_          _Andrus, A.C.J._