IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of:

TONY VIVOLO RESIDUARY TRUST
F/B/O NICOLAS VIVOLO and the
ESTATE OF NICK VIVOLO

No. 85676-6-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — At issue in this appeal is whether Nicholas Vivolo exercised his power of appointment in his will as to his share of the Tony Vivolo Residuary Trust, that was first created by his father. Based on our de novo review of Nicholas'[1] will, we hold that he did not exercise his power of appointment and affirm.

FACTS

Tony Vivolo and Iona Vivolo were married and had six children: Ronald, Steven, Nicholas, Joseph, Vance, and Vincent. The family also included several grandchildren, including Christopher, the son of Vincent, who predeceased Iona. In 1970 Tony and Iona created the family Irrevocable Trust for the benefit of their children. In Tony's 1994 will, he granted each of his children, except Steven, a power of appointment as to their individual share of Tony's Residuary Trust. Tony expressly disinherited Steven. Two

_____

[1] Because multiple family members share the same surname, for clarity and consistency we refer to all family members by their first names as listed in their parents' wills.

years later, Tony executed a second codicil to his will and no longer excluded Steven. In this codicil, Tony granted Iona a special power of appointment to designate and appoint by her last will the manner in which Tony's Residuary Trust shall be divided and distributed into shares for their surviving children and the lawful surviving descendants of any deceased child of theirs. Though Tony expressed his wishes as to how the shares were to be distributed, he expressly stated those wishes were "not binding" on his wife.

By 2005, Iona was a widow and two of her sons had already passed. In addition to the family trust, and Tony's Residuary Trust, she also had created a GSTT Exempt Trust, and a Non-GSTT Exempt Trust.[2] Iona executed her will, dated July 28, 2005, and granted all of her children, whether living or deceased, a general power of appointment as to the GSTT Non-Exempt Trust. That grant stated:

> (c) *General Power of Appointment:* Each Child shall have the power to appoint in his Will to such appointee or appointees whomsoever, on such terms and in such amounts as he shall determine, all of the remainder of his or her Share of the Non-GSTT Exempt Trust ("the Appointive Property"). To the extent a Child fails to exercise such power, the Appointive Property shall be distributed as otherwise provided in subparagraphs (iii) and (iv) of paragraph 2(b) above. I intend this power of appointment to be a taxable "general power of appointment" as described in IRC Sec. 2041 exercisable in favor of the Child's creditors, his estate, or the creditors of his estate.

Iona also exercised her power of appointment as to Tony's Residuary Trust that Tony had granted her. Her will stated:

> EXERCISE OF LIMITED POWER OF APPOINTMENT
>
> I hereby elect to exercise the power of appointment to designate the shares of the Residuary Trust established under the Will of my husband, Tony Vivolo, that was vested in me pursuant to the Second

---

[2] Within the context of trusts and asset transfers, GSTT stands for Generation-Skipping Transfer Tax.

2

Codicil to the Last Will and Testament of Tony Vivolo, dated March 28, 1996,[3] as follows: The Residuary Trust shall be divided into equal Shares, one Share for each of my Children who survives me and one Share for the issue of a Child who does not survive me, in the same manner as provided in Article II, paragraph 3(a), except that these Shares of the Residuary Trust shall not be adjusted to account for Lifetime Benefits as I have made what I consider to be the appropriate adjustments in paragraph 3(a) of Article II of this Will with respect to the Shares of my own estate. In all other respects, the Shares from my husband's Residuary Trust described in this Article V shall be administered and distributed in the same manner as the Shares of the Non-GSTT Exempt Trust described in Article II, paragraph 3.

Later, while Iona was still alive, all three trusts (the family Irrevocable Trust, Tony's Residuary Trust, and the Non-GSTT Exempt Trust) were merged in 2008 into a Family Irrevocable Trust and converted into six separate trusts. After Iona died, litigation ensued that led to a court-approved TEDRA Agreement that involved all living beneficiaries and representatives of future children of all current beneficiaries.[4] Nicholas, Steven, and Christopher were represented by counsel. The Agreement expressly stated its purpose, which included to "correct the effect of the 2008 merger, which merged trusts with varying and conflicting provisions."[5]

---

[3] Tony's second codicil to his will is dated March 28, 1996. The second codicil refers to his first codicil dated November 22, 1995. His first codicil is related to Tony's 1994 will.

[4] The Order Approving the TEDRA Agreement was entered after considering objections to the "Amended 'Reform TENDRA Agreement.'" The order approved the TEDRA Agreement attached as "Exhibit A" to the order. The record does not include "Exhibit A." However, both parties cite to the same TEDRA Agreement that is in the record as the court-approved TEDRA Agreement.

[5] The other stated purposes were to: 2) clarify the duties of the Trustee, 3) allow Chris Vivolo, who has very different needs than the other beneficiaries, to enjoy the benefits of trusts that have fewer links to the trusts for the other beneficiaries, 4) allow beneficiaries with greater cash needs to obtain that cash, while providing a method for beneficiaries with fewer cash needs to accumulate funds which may be used to purchase other trust property or diversify, 5) avoid further litigation.

The Agreement states, in relevant parts:

A. Definitions
....
The "Non-Exempt Trusts" are defined as the Vivolo Family Irrevocable Trusts for the benefit of Ron Vivolo, Steve Vivolo, Nick Vivolo, Vance Vivolo, Joseph Vivolo and Chris Vivolo, which are the surviving trusts after the merger of the Vivolo Family Irrevocable Trust, created by Iona Vivolo during her life, the Tony Vivolo Residuary Trust created in his Last Will and Codicils, and the Non-GSTT Exempt Trust created under the Last Will and Testament of Iona Vivolo. Initially these were three single trusts each with six separate shares, and after the 2008 merger the single Vivolo Family Irrevocable Trust, with six shares, was converted to six separate trusts....

3.  Provisions regarding the Non-Exempt trusts.[6]
....
b. Article V 2 (e) of the Non-Exempt trusts shall be amended to read as follows:

"(e) *General Power of Appointment.* Whether or not a Child survives the Grantor, each Child shall have the power to appoint in his Will to such appointee or appointees whomsoever, on such terms and in such amounts as he shall determine, all of the remainder of his Share ("the Appointive Property"). To the extent a Child fails to exercise such power, the Appointive Property shall be distributed as otherwise provided in this Agreement. I intend this power of appointment to be a taxable "general power of appointment" as described in IRC Sec. 2041 exercisable in favor of the Child's creditors, his estate, or the creditors of his estate."

c. Article V 2 (c) of the Non-Exempt trusts is amended to read as follows:

"(c) *Death of Child.* Upon the death of a Child, subject to the provisions of paragraphs (d) and (e) below, the Trustee shall distribute any then remaining portion of the Child's Share to the issue of that Child then living by right of representation, or, if there is no issue of that Child then living, two thirds to the living issue of the other Children by right of representation and one third to the descendants of Iona Vivolo by right of representation; provided, that if the Trustee is then holding another Share for the primary benefit of another Child or any issue, that person's portion shall be added to the Share of that beneficiary and shall be held and distributed as a part of that Share."
....
6.  Provisions regarding the Tony Vivolo Residuary Trust. The Tony Vivolo Residuary Trusts shall be reinstated for the four surviving sons of Tony, with the same terms as existed before the merger in 2008. To that

---

[6] The modified provisions relate to the Vivolo Family Limited Liability Company (LLC) as contemplated in the 2005 Vivolo Family Irrevocable Trust Agreement.

end, each of the Non-Exempt Trusts for Steve, Ron, Nick and Vance, which own 13.97% of the 3020 NE 45th St LLC shall distribute to the Residuary Trusts 7.9767% each and retain 5.9933% each.

In October 2017, Nicholas executed his will. In it, he reserved the ability to dispose of his tangible personal property by stating that he gave "all my interest in certain items of tangible personal property to the persons designated in a separate writing, which is signed by me and included in this Will on page 9 that describes those items of property and directs their disposition." He also provided in his will the following:

> After payment of taxes and liabilities and other expenses of administration, I give, devise and bequeath the rest, residue and remainder of my estate to my brother, STEVEN VIVOLO.[7]... This includes, but is not limited to, my power to appoint and my "appointive property" as outlined in the non-exempt GSTT Trust that I am to take free of trust as outlined in that certain TEDRA Agreement, Page 7, Section 3 b. as follows: *(e) General Power of Appointment.* Whether or not a Child survives the Grantor, each child shall have the power to appoint in his Will to such appointee or appointees whomsoever, on such terms and in amounts as he shall determine, all of the remainder of his share ("the Appointive Property"). To the extent child fails to exercise such power, the Appointive Property shall be distributed as otherwise provided in this Agreement. I intend this power of appointment to be a taxable "general power of appointment" as described in IRC Sec. 2041 exercisable in favor of the Child's creditors, his estate, or the creditors of his estate."

After Nicholas died in 2020, his will was admitted to probate. At the time of his death, page 9 of his will, which provides the directions for disposition of his tangible personal property, was blank. Steven was appointed as personal representative.

In January 2023, Partners In Care (PIC), the trustee of the Vivolo family trusts and manager of the Vivolo Family LLC, sought court approval for an interim distribution from trusts that were for the benefit of Nicholas. PIC specifically questioned whether the

---

[7] The will provided that if Steven predeceased Nicholas, or he and Nicholas died in a common accident, the rest, residue and remainder of his estate would go to Steven's immediate family.

provisions in his will met the requirements to exercise his power of appointment with regard to the Tony Vivolo Residuary Trust.

Steven, acting in his capacity as personal representative of Nicholas' estate, filed a response to PIC's petition. Steven agreed with the proposed interim distribution plan regarding the GSTT Exempt Trust and GSTT Non-Exempt Trust. However, he requested that, while the specific language governing the exercise of appointment may be ambiguous, the court should interpret and construe the will provision as a valid exercise of power of appointment over Tony's Residuary Trust and that Nicholas "intended to exercise his power of appointment unto all trusts he had an interest in ..." and "allocate all his assets to Steven."

Christopher also filed a response to PIC's petition. Christopher disputed the sufficiency of the will language as it pertains to the exercise of appointment as to the Residuary Trust.

At the February 2023 hearing before a King County Superior Court commissioner, all parties agreed with the commissioner that the question of whether Nicholas exercised his power of appointment as to the Residuary Trust should be reserved to allow for more briefing. The court approved an interim distribution from the GSTT Exempt Trust and the GSTT Non-Exempt Trust, but, handwritten on the submitted proposed order, directed that the trustee shall not make further distributions from the Residuary Trust pending further order, and indicated that the Residuary Trust is "reserved pending further order in TEDRA proceeding."

The commissioner did not make any oral findings of fact related to the Residuary Trust, but the signed order included the following finding of fact and conclusion of law:

6

"In his Last Will and Testament, Nick Vivolo has effectively exercised his power of appointment over assets held in the GSTT Non-Exempt Trust and the Tony Vivolo Residuary Trust, and in both cases, he has exercised his power of appointment in favor of Steve Vivolo."

In April 2023 PIC filed a petition requesting instructions on how to distribute the Residuary Trust for the benefit of Nicholas because the question regarding whether he had exercised his appointment over said trust remained unresolved. Christopher and Steven filed separate responses. Christopher argued that Nicholas' will was not ambiguous and that Nicholas did not exercise his power of appointment as to the Residuary Trust. Steven initially responded that the will may be ambiguous. Steven also submitted two declarations for support: one from Tracy Codd, the attorney who advised Nicholas on what language to include in his will; and another from Jason Crummer, a realtor who assisted Nicholas in the purchase of a condominium. Codd's declaration did not include any time frame as to when she met with Nicholas. She wrote that he told her about the TEDRA Agreement and the Non-Exempt GSTT Trust, but not the Residuary Trust. Crummer helped Nicholas purchase a condominium in August of 2016 and continued to check on him from time to time after the property closed. It was during these conversations, Crummer reports, that Nicholas wanted all his "property" to be distributed to Steven, though he never specified any particular asset. Both Codd and Crummer opined that it was their belief that Nicholas wanted to give everything to Steven.

The same commissioner who entered the previous order reserving the issue concluded that it did not need to consider extrinsic evidence because the will is

7

unambiguous and reflects that Nick had not exercised his power of appointment over the Residuary Trust. On July 14, 2023, the court entered a judgment that in his Last Will and Testament, Nick Vivolo had not exercised his power of appointment with regard to his benefit in the Tony Vivolo Residuary Trust. Steven appeals.[8]

## DISCUSSION

### Res judicata

Steven contends that the doctrine of res judicata bars re-litigation regarding the commissioner's initial order finding that Nick Vivolo's Last Will and Testament effectively exercised his power of appointment over the Residuary Trust.

Whether res judicata bars an action is a question of law we review de novo. Lynn v. Dep't of Labor & Indus., 130 Wn. App. 829, 837, 125 P.3d 202 (2005). Res judicata is a doctrine of claim preclusion. Williams v. Leone & Keeble, Inc., 171 Wn.2d 726, 730, 254 P.3d 818 (2011). It bars the re-litigation of claims and issues that were litigated, or could have been litigated, in a prior action. Pederson v. Potter, 103 Wn. App. 62, 67, 11 P.3d 833 (2000). The person asserting the defense of res judicata bears the burden of proof. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 865, 93 P.3d 108 (2004). "The threshold requirement of res judicata is a final judgment on the merits in the prior suit." Id. "Once that threshold is met, res judicata requires sameness of subject matter, cause of action, people and parties, and 'the quality of the persons for or against whom the claim is made.'" Id. at 865-66 (quoting Rains v. State, 100 Wn.2d 660, 663, 674 P.2d 165 (1983)).

---

[8] Steven filed a motion for reconsideration but because of the way it was filed, the commissioner did not see it until after Steven had filed his notice of appeal. The court ruled that under RAP 7.2 the motion was stayed and the court could not consider it without permission from this court.

Res judicata is an affirmative defense that is waived if it is "not affirmatively pleaded, asserted with a motion under CR 12(b), or tried by the express or implied consent of the parties." Farmers Ins. Co. of Wash. v. Miller, 87 Wn.2d 70, 76, 549 P.2d 9 (1976); see also CR 8(c). A claim for res judicata will not be considered for the first time on appeal. See Milligan v. Thompson, 110 Wn. App. 628, 633, 42 P.3d 418 (2002) (refusing to consider appellant's res judicata argument because appellant did not argue res judicata when he opposed the respondent's summary judgment motion in the trial court). We consider "only evidence and issues called to the attention of the trial court." RAP 9.12.

We decline to entertain Steven's argument for multiple reasons. First, Steven waived this argument because he did not raise it below. Second, Steven's assertion that the commissioner previously considered the issue on the merits and made a final ruling is disingenuous. At the hearing to consider the trustee's request for an interim distribution, the commissioner began the proceeding by stating,

> And I think I'd like to start there first, the issue being whether or not the request today should be basically reserved, pending outcome of some sort of TEDRA proceeding to determine whether or not the exercise of the power of appointment was – included the trust that was appropriate and the language was appropriate to do so.

All parties agreed, including Christopher's counsel, who said, "As it relates to the reservation of the issue on Tony's trust and whether or not Nick's will effectively exercised the power of appointment, we're in agreement, if that's what the Court's decision is, to reserve that issue and have a separate briefing on that." PIC responded to the dispute by stating it was not taking a position one way or the other, and would

> be more than happy to, sort of, strike out that language, reserve that issue for a later hearing with a provision that the trustee would not make any

9

> distributions from the mixed share of the Tony Vivolo Residuary Trust as part of this.
>
> Though, I think the other portions of the order and the other preliminary distributions proposed should -- you know, we would still like to move forward with that just to kind of get this ball moving forward.

The final signed order, which had been proposed by PIC, reflects the addition of hand-written language reserving the issue and barring further distribution from the Residuary Trust. But it still included a typed finding of fact and conclusion of law stating that Nicholas exercised his power of appointment over assets held in the GSTT Non-Exempt Trust "and the Tony Vivolo Residuary Trust" and that Nicholas did so in favor of Steven. The record suggests that PIC intended to strike out language related to the issue that the court was reserving on but failed to do so. Lastly, the order was not a final judgment on the merits.

Steven also incorrectly argues that the application of the law of the case doctrine also barred the commissioner from revisiting the issue after it had signed the previous order with the finding. In addition to the fact the record suggests the previous finding was not actually made by the court and was inadvertently included in the signed order, Steven misconstrues the law of the case doctrine.

Under Washington law, "in its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). "[T]he law of the case

doctrine requires a prior appellate court decision in the same case."[9] In re Estate of Jones, 170 Wn. App. 594, 605, 287 P.3d 610 (2012).

Accordingly, we conclude that Steven's arguments under the law of the case and res judicata arguments are without merit.

### Power of Appointment

Steven contends that Nicholas' will unambiguously reflects that he exercised his power of appointment as to the Residuary Trust. We disagree.

This Court reviews de novo a trial court's interpretation of a will. In re Estate of Wright, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008). Interpretation of a statute is also subject to de novo review. In re Estate of Rathbone, 190 Wn.2d 332, 338, 412 P.3d 1283 (2018).

"When called upon to construe a will, the paramount duty of the court is to give effect to the testator's intent." In re Estate of Bergau, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). "The intent must, if possible, be derived from the four corners of the will and the will must be considered in its entirety." In re Estate of Mell, 105 Wn.2d 518, 524, 716 P.2d 836 (1986) (citing Bergau, 103 Wn.2d at 435). "The testator is presumed to have known the law at the time of execution of his will." Id. (citing In re Estate of Patton, 6 Wn. App. 464, 471, 494 P.2d 238 (1972)). "A distinction should be made between will 'interpretation' and will 'construction'. While interpretation is the 'process of discovering the meaning or intention of the testator from permissible data', construction, in a technical sense, is 'assigning meaning to the instrument when the testator's intention

---

[9] The phrase "law of the case" also has been used to describe when "jury instructions not objected to become the law of the case" in criminal trials. State v. Hickman, 135 Wn.2d 97, 101-03, 954 P.2d 900 (1998) (citing State v. Hames, 74 Wn.2d 721, 725, 446 P.2d 344 (1968)).

cannot be fully ascertained from proper sources.'" In re Estate of Wendl, 37 Wn. App. 894, 897, 684 P.2d 1320 (1984).

"However, even where no ambiguity exists in the will language so as to invoke the rule against construction, it is still necessary to construe and give effect to the testator's intent from the will language. In re Estate of Riemcke, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972). Thus, though in construing intent from the words of the will, the court may not rewrite the will, it is nevertheless appropriate to consider 'the situation as it existed when the will was drawn' with an awareness of 'all the surrounding circumstances.'" Id. (quoting Anderson v. Anderson, 80 Wn.2d 496, 499, 495 P.2d 1037 (1972)). Surrounding circumstances pertain to objective factors, not contemporaneous statements. Id. at 897-98; See, e.g., In re Estate of Newbert, 16 Wn. App. 327, 555 P.2d 1189 (1976) (circumstances to be considered in determining if the testator intended a class gift: the fact of whether there is a natural class among the beneficiaries, the relationship of the testator to the objects of his bounty, the subject matter of the gift, and the skill of the draftsman of the will). "When, after reading the will in its entirety, any uncertainty arises about the testator's intent, extrinsic evidence, including testimony of the drafter, may be admitted to explain and resolve the ambiguity." Mell, 105 Wn.2d at 524 (citing Bergau, 103 Wn.2d at 436).

RCW 11.95A.200 provides that a power of appointment is exercised only:

(1) If the instrument exercising the power is valid under applicable law;
(2) If the terms of the instrument exercising the power:
(a) Manifest the powerholder's intent to exercise the power; and
(b) Subject to RCW 11.95A.230, satisfy the requirements of exercise, if any, imposed by the donor; and
(3) To the extent the appointment is a permissible exercise of the power.

The Washington legislature has given deference to the residuary clause in determining a decedent's intent in exercising a power of appointment, as laid out in RCW 11.95A.210(2), which provides:

> (2) A residuary clause in a powerholder's will, or a comparable clause in the powerholder's revocable trust, manifests the powerholder's intent to exercise a power of appointment only if:
> (a) The terms of the instrument containing the residuary clause do not manifest a contrary intent;
> (b) The power is a general power exercisable in favor of the powerholder's estate;
> (c) There is no gift-in-default clause or the clause is ineffective; and
> (d) The powerholder did not release the power.

Nicholas' residuary clause, alone, cannot support a conclusion that Nicholas exercised his power of appointment as to the Residuary Trust because the terms of his will manifest a contrary intent, and there is a gift-in-default clause within the power of appointment language. Both parties cite to Tony's will as the source of Nicholas' power of appointment, but, as stated in the TEDRA Agreement, the terms of the Residuary Trust are those that existed prior to the merger in 2008.[10] That means the terms were those in Iona's 2005 will, in which she exercised her power of appointment granted to her by Tony as to his Residuary Trust. As expressed in Iona's will, "the Shares from my husband's Residuary Trust described in this Article V shall be administered and distributed in the same manner as the Shares of the Non-GSTT Exempt Trust described in Article II, paragraph 3." In turn, paragraph 3(c) of the Non-GSTT Exempt Trust grants the general power of appointment to each of her children and includes a gift-in-default clause: "To the extent a Child fails to exercise such power, the Appointive Property shall be distributed as otherwise provided in subparagraphs (iii) and (iv) of paragraph 2(b)

---

[10] Nothing in the record before us establishes that the TEDRA Agreement extinguished the effect of Iona's 2005 will.

13

above." Tony's will also grants the power of appointment to each of his children and includes a gift-in-default clause.[11] In any event, the parties agree that Nicholas had a power of appointment available to him as to the Residuary Trust and that the grant of this power also included a gift-in-default clause.

The language that manifests a contrary intent as to Nicholas' exercise of that power is the language in Nicholas' will in which he expressly exercised his power of appointment as to the Non-Exempt GSTT Trust without any mention of the Residuary Trust, the subject property of that Trust, or the instruments that granted him power of appointment as to that trust, whether that be Iona's will or Tony's will. In granting Steven the remainder of his estate, Nicholas' will states

> This includes, but is not limited to, my power to appoint and my "appointive property" as outlined in the non-exempt GSTT Trust that I am to take free of trust as outlined in that certain TEDRA Agreement, Page 7, Section 3 b. as follows: *(e) General Power of Appointment.* Whether or not a Child survives the Grantor, each child shall have the power to appoint in his Will to such appointee or appointees whomsoever, on such terms and in amounts as he shall determine, all of the remainder of his share ("the Appointive Property").

Nicholas used the singular "my power to appoint" and not "my powers to appoint" and he did so in reference only to one of the trusts, the Non-Exempt GSTT Trust.[12] And

---

[11] Tony's will provided:
In the event of the death of a child of ours without having exercised his power of appointment and without leaving lawful surviving descendants, his share shall be added to and applied along with the shares set aside hereunder for my surviving children named in Article I of this Will and the lawful surviving descendants of such a deceased child of mine, by right or representation.

[12] We apply grammatical rules in will interpretation. See Shufeldt v. Shufeldt, 130 Wash. 253, 260, 227 P.6 (1924); In re Estate of Smith, 40 Wn. App. 790, 793, 700 P.2d 1181 (1985). Under the last antecedent rule, the qualifying or modifying words and phrases refer to the last antecedent. See PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue, 9 Wn. App. 2d 775, 780, 449 P.3d 676 (2019), aff'd, 196 Wn.2d 1, 468 P.3d 1056 (2020). And the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one. Id. However, the last antecedent rule is "not inflexible and uniformly binding." Id. Structural or contextual evidence may rebut the

he quoted the power of appointment that was granted to him for that Trust from the TEDRA Agreement.

The reference to the TEDRA Agreement establishes that at the time Nicholas executed his will, he was aware that the TEDRA Agreement reinstated the Residuary Trust and that the terms were those that existed prior to the 2008 merger, meaning he still had his power of appointment as to the Residuary Trust. Despite knowing this, he elected only to mention the Non-Exempt GSTT Trust. Had Nicholas intended for his residuary clause to encompass all his powers of appointment, there would have been no need to expressly identify the Non-Exempt GSTT Trust.

Steven argues that the use of the term "not limited to" is the language that indicates Nicholas exercised his power of appointment as to all of his trusts, including the Residuary Trust. But this language followed the residuary clause.

We are not persuaded that the term "not limited to" plainly refers to the inclusion of his power of appointment as to the Residuary Trust. In context, at the time of the will, Nicholas allowed himself the ability to later dispose of tangible personal property. Viewed in the context of the entire will, the phrase "not limited to" suggests that he could

---

last antecedent inference. Id. at 781. Here, though there is no comma before the phrase "as outlined in the non-exempt GSTT Trust," we nevertheless read the phrase to modify both the last antecedent, "my 'appointive property,'" as well as the antecedent "my power to appoint." "Under the 'series-qualifier' rule of grammar, there is a presumption that 'when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.'" BLACK'S LAW DICTIONARY (10th ed. 2014). This rule applies when two textual signals are present: first, when the modifying phrase makes sense with all items in the series; and second, when the modifying clause appears at the end of a single, integrated list." PeaceHealth St. Joseph Med. Ctr., 9 Wn. App. 2d at 781 (citing Lockhart v. United States, 577 U.S. 347, 355, 136 S. Ct. 958, 194 L. Ed. 2d 48 (2016)). In the instant case, "my power to appoint and my 'appointive property'" is a single integrated list. Thus, the phrase "as outlined in the non-exempt GSST Trust" modifies both.

still leave additional personal property to Steven beyond his power to appoint and his appointive property as outlined in the Non-Exempt GSST Trust.

Steven argues that Nicholas' will need not expressly mention the power if the intent to exercise it is manifested otherwise. First Interstate Bank of Wash. v. Lindberg, 49 Wn. App. 788, 795, 746 P.2d 333 (1987). It is true that a powerholder's intent is ascertained "from the language of the will itself." Bergau, 103 Wn.2d at 435. However, the language of Nicholas' will manifested the intent to exercise his power of appointment only as to the Non-Exempt GSTT Trust. Certainly, Nicholas could have included reference to the Residuary Trust just as he had the Non-Exempt GSTT Trust.

Steven's reliance on Lindberg, 49 Wn. App. at 795 is unavailing. Unlike the multiple trusts in the instant case, in Lindberg, the court dealt with a straightforward situation involving a single trust. Specifically, the language used in the will at issue in Lindberg provided that "if I have failed to convey to my said Trustee any item of real or personal property and the same remains in my probate estate," the executor was then directed to distribute the testator's assets to the trust. Id. at 795. In contrast, the present case involves multiple trusts. Christopher argues that application of Lindberg provides a prime example of how effective a blanket-exercise clause can be with regard to property disposition. We agree, but the language in Nicholas' will does not provide such a blanket-exercise clause as defined in RCW 11.95A.010(3):

> "Blanket-exercise clause" means a clause in an instrument which exercises a power of appointment and is not a specific-exercise clause. The term includes a clause that:
> (a) Expressly uses the words "any power" in exercising any power of appointment the powerholder has;
> (b) Expressly uses the words "any property" in appointing any property over which the powerholder has a power of appointment; or
> (c) Disposes of all property subject to disposition by the powerholder.

16

In the instant case, Nicholas did not use any such blanket-exercise clause, and instead referenced only the Non-Exempt GSTT Trust.

We conclude that Nicholas' will is not ambiguous and that he did not manifest an intent to exercise his power of appointment as to the Residuary Trust.

### Attorney Fees

Both Steven and Christopher argue that they are entitled to an award of attorney fees on appeal, pursuant to RAP 18.1, RAP 14.2, and RCW 11.96A.150. RCW 11.96A.150 grants the court discretion to award reasonable attorney fees and costs to the prevailing party. Because Christopher is the prevailing party on appeal, we exercise our discretion to award attorney fees to Christopher upon compliance with RAP 18.1(d). Though Steven asserts that he was responding to the trustee's petition as representative of Nicholas' estate, in effect he was advocating for an interpretation that would benefit himself personally. We grant Christopher's request that the attorney fees be paid from the portion of Nicholas' share of the Residuary Trust to be distributed to Steven.

We affirm.

_____
Coburn, J.

WE CONCUR:

_____        _____
Chung, J.                                Mann, J.